## Case No. 14,080.

### TOLMIE v. THOMPSON.

[3 Cranch, C. C. 123.] [1]

Circuit Court, District of Columbia. May Term, 1827. [2]

COURTS—GENERAL JURISDICTION—STATUTORY JURISDICTION—SALE OF INTESTATE'S ESTATE—HOW MADE—MINOR HEIRS.

1. Where proceedings are under the general and ordinary jurisdiction of the court, as a court of law or a court of equity, many things may be presumed which do not appear upon the record, and evidence will not be permitted, to contradict the presumptions arising from the acts of the court. But if the proceedings be under a special authority, delegated to the court in a particular case and not under its general jurisdiction, as a court of common law or of equity, nothing material can be presumed; and the person claiming title under such proceedings must show them to be regular, and to be in a case in which the court had jurisdiction, and was authorized to do what it has done.

2. The proceedings for the partition or sale of the real estate of an intestate, under the Maryland act of descents, 1786 (chapter 45, § 8), are under a special jurisdiction given to a county court in a particular case, and every thing necessary to their validity must be proved.

3. A sale under that statute is the act of the commissioners, not of the court, and, to be valid, must be ratified by the court; and such ratification must be absolute, not dependent upon an act to be done in pais.

4. If all the heirs are minors at the time of the sale, it is void.

Ejectment by the lessees of the heirs of Robert Tolmie, against the defendant, James Thompson, tenant in possession, claiming in right of his wife, who purchased the property (lot 14, in square 290, in Washington), at a sale made in 1814, by commissioners under the Maryland act of descents, 1786 (chapter 45, § 8), and the case turned upon the validity of that sale. By that act it is

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 2 Pet. (27 U. S.) 157.]

enacted, "That in case the parties entitled to the intestate's estate cannot agree upon the division thereof, or in case any person entitled to any part be a minor, an application may be made to the court of the county where the estate lies, and the court shall appoint and issue a commission to five discreet and sensible men, who, before they act, shall take an oath, to be annexed to the commission, well and truly, and without favor, partiality, or prejudice, to adjudge and determine whether the estate will admit of being divided, without injury and loss to all the parties entitled, and to ascertain the value of such estate in current money; and if the estate can, in the opinion and judgment of the commissioners, or a majority of them, be divided, without loss and injury to all the parties entitled, that they will then divide and make partition of the same, fairly and equally in value between all the parties interested, according to their several just proportions; and if the said commissioners, or a majority of them, shall determine that the estate cannot be divided, without loss to all the parties, then they shall make return to the county court of their judgment, and the reasons upon which the same is formed, and the real value of the estate in current money; and if the judgment of the commissioners shall be confirmed by the county court, then the eldest son, child, or person entitled, if of age, shall have election to take the whole estate, and pay to the others their just proportions of the value in money; and if the eldest child, or person entitled, refuses to take the estate, and pay to the others money for their proportions, then the next eldest child, or person entitled, being of age, shall have the next election, and so on to the youngest child, or person entitled; and if all refuse, then the estate shall be sold under the direction of the said commissioners, or a majority of them, for money, or upon credit, as they, with a majority of the persons interested who are of age, and the guardians of such as may be minors, shall determine to be most advantageous to all concerned; and the purchase-money shall be justly divided among the several persons interested, according to their respective titles to the estate. But if all the parties entitled shall be minors at the death of the intestate, the estate shall not be sold until the eldest arrives to age, and the profits of the estate shall be equally divided in the mean time." The act then provides for the case where the lands may, in the opinion of the commissioners, be divided without loss, &c., and directs them to divide and allot the same to the respective parties, and return their proceedings to the next county court, "which shall be ratified or rejected as justice shall dictate; and either party may appeal to the chancellor from the judgment of the county court. If the lands lie in different counties, then application may be made to the chancellor, who shall appoint commissioners," who "shall proceed in the same manner," &c.; "and in the execution of this act reasonable notice shall always be given by the commissioners to all parties concerned, before any proceeding is had; and if any minor is interested who hath not a guardian, then the court from which the commission issues shall appoint a guardian for the purpose; and no proceedings of the commissioners shall be set aside for matter of form." The act of Maryland, 1797 (chapter 114, § 6), provides "that all sales, by the act to direct descents, directed to be made of lands which will not admit of division amongst the heirs, shall be made agreeably to the order of the court from which the commissions issued, and shall not be valid until ratified by the said court." In the preamble to the act of Maryland, 1799 (chapter 49), it is said to be "expedient and proper that deeds of conveyance should be executed and acknowledged to purchasers, in those cases wherein it becomes necessary for commissioners to make sale of the intestate's estates, as manifesting the best evidence of their title, in future times." And by the third section, it is enacted, "that in all cases of sale made by the said commissioners, after the same shall be ratified by the respective county courts, or chancellor, and the terms of sale shall have been complied with, by the purchaser or purchasers having paid the purchase-money, agreeably to the said terms of sale, it shall then be the duty of the commissioners, or the majority of them, or the survivors or survivor of them, to make over unto the purchaser or purchasers, by deed duly executed and acknowledged according to law, all the right, title, interest, claim, and estate of the deceased intestate to the land and premises sold by them in virtue of their commission; and the commission and proceedings thereon shall be recited in the preamble of the respective deeds; and every such deed shall be recorded within the time now limited by law." And by the fourth section it is enacted, "that when the estate of an intestate shall be sold on a credit, bonds shall be taken for the purchase-money, from the purchaser or purchasers, by the commissioners, with security, if required, and made payable to each representative respectively, according to his or her proportionable part of the net amount of sales."

Upon the trial of this cause, it was agreed by the parties that the jury should find their verdict for the plaintiff, subject to the opinion of the court upon the following case agreed:— That Robert Tolmie died intestate, seized in fee of the lot in question, in the year 1805, leaving Margaret, Alice, and James Tolmie, his children and only heirs at law, who were then infants under the age of twenty-one years, and who entered and continued in possession until some time in the year 1814. That Margaret was the eldest of

the said infants, and that she intermarried with one Francis Beveridge, and has since died, leaving three children, to wit, Margaret Beveridge, Hannah Beveridge, and James Beveridge, who are named among the lessors of the plaintiff. That James Tolmie aforesaid also died after the death of the said Margaret, his sister, intestate, under age, and unmarried, prior to the commencement of this suit, leaving the said Alice, his sister, and the said three children of Margaret, his heirs at law. That the said Margaret Tolmie was seventeen years of age at the time of her said marriage, which was in 1812, and was an infant under the age of twenty-one years at the time of the sale made by the commissioners hereinafter mentioned. That her husband, the said Francis Beveridge, some time in the year 1814 or 1815, went away, leaving his family residents in the city of Washington, and has never been heard of for several years, and is generally believed by his family and friends to be dead. That the defendant has possession of the property, and has held possession thereof since the year 1814, when Julia Kean, now the wife of the defendant, became the purchaser of the same, at a public sale made by certain commissioners under the proceedings following:— "To the Honorable the Judges of the Circuit Court of the District of Columbia, Sitting for the County of Washington. The petition of Francis Beveridge and Margaret his wife, and of Alice Tolmie and James Tolmie, infants, by Margaret Tolmie their guardian, mother, and next friend, all of said county, respectfully showeth:— That Robert Tolmie, late of said county, deceased, died intestate, leaving the said Margaret his widow; also the following children and heirs at law, to wit, Margaret, since intermarried with said Francis Beveridge, said Alice Tolmie, and James Tolmie, which said Alice and James are infants under the age of twenty-one years. That said Robert Tolmie died seized in fee of lot number fourteen in square number two hundred and ninety, in the city of Washington, with its appurtenances. That the said lot has descended in coparcenery to the said parties, who are desirous of having the same divided among them; they therefore pray that a commission may issue to commissioners as directed by law, for the purpose of ascertaining whether the said property be susceptible of division, or of selling the same and dividing the proceeds. That for that purpose, guardians may be assigned by this court to said infants, and such other order made in the premises as to this honorable court may appear right, and agreeable to the act in such cases made and provided. They beg leave to refer to the deed for said lot now filed and exhibited; and will ever pray, &c. John Hewitt, Solicitor for Petitioners. June term, 1814." This petition was filed on the 15th of June, 1814; and on the same day Margaret Tolmie, the mother, was appointed guardian of the infant petitioners, and a commission was issued to David Appler, David Shoemaker, David Ott, Samuel Hoyt, and Clotworthy Stephenson, in the usual form, "to adjudge and determine whether the lot of ground aforesaid will admit of being divided without injury and loss to all the parties entitled; and to ascertain the value of said lot in current money; and that if the said lot can be divided, then to divide and make partition of the same between all the parties interested according to their several just proportions; and if the said lot cannot be divided without loss to all the said parties, to return the same to the said court, with the reasons thereof, and the real value of the said lot in current money, according to the act of assembly of Maryland in such cases made and provided." On the back of this commission was a certificate of a justice of the peace, that on the 17th of June, 1814, the commissioners were duly sworn and affirmed, "that they will well and truly and without favor, partiality, or prejudice, adjudge and determine whether the estate within mentioned will admit of being divided without any injury or loss to all the parties entitled; and that they will ascertain the value of such estate in current money; and if the estate can, in their opinion and judgment, or in the opinion and judgment of a majority of them, be divided without loss and injury to all the parties entitled, that then they will divide and make partition of the same fairly and equally in value between all the parties interested according to their several just proportions." On the 20th of June, 1814, the commissioners reported that they had taken the oath, &c., and after having given reasonable notice to all the parties concerned, they met, and having made an accurate survey and view of the said estate, they "adjudged and determined that the estate would not admit of a division without injury to all the parties concerned;" and stated the reason of their opinion to be that the property consisted of a single lot, on which was built a small frame building; they therefore recommended a sale of the premises, and valued the same at $1,400 in current money. On the 6th of July, 1814, the heirs respectively and successively refused to take the estate at the valuation, and thereupon the following order was made by the court:— "The commissioners appointed in this case having returned to the court, that the property mentioned in the petition 'will not admit of a division without loss to all the parties concerned; and all the said parties having refused to take the same at the valuation and pay the others their respective proportions; it is therefore adjudged and ordered by the court, that the said commissioners, or a majority of them, proceed to sell the said property at public auction; that they give ten days previous notice of the time, place, and terms of sale by advertisement inserted four times in the National Intelligencer, and three times in a Georgetown

newspaper; that the terms be one fourth of the purchase-money cash; one fourth on a credit of three months; one fourth on a credit of six months; and the remaining fourth on a credit of nine months, from the day of sale, taking bonds with good security to the heirs according to their several interests, bearing interest from the day of sale."

Among the papers in the cause is the following, not marked by the clerk as filed, nor noted upon the clerk's docket:— "To the Honorable the Judges of the Circuit Court for the County of Washington. The undersigned, a majority of the commissioners appointed by this honorable court, at June term last, to sell a certain house and lot in Washington City, being lot number fourteen, in square number two hundred and ninety, as the estate of the heirs at law and representatives of Robert Tolmie, deceased, beg leave to report, that having, according to order, advertised the same for ten days in the National Intelligencer, and three times in a Georgetown newspaper, they did proceed to sell the same on the thirtieth day of July last on the premises; at which said sale Julia Kean being the highest bidder, for the sum of eleven hundred and five dollars, on a credit of three, six, and nine months; one fourth being paid in hand; that she gave due security for the payment of the purchase-money; all which has been duly paid with interest; they therefore request that the said sale be ratified; and that they may be directed to distribute the proceeds, and to make a conveyance to the purchaser aforesaid. They herewith submit an account of the expenditures. Given under the hands of us, a majority of the commissioners, this third day of July, in the year one thousand eight hundred and fifteen. David Appler. [Seal.] David Shoemaker. [Seal.] David Ott. [Seal.]" On the 3d of July, 1815, the following order was made by the court:— "Ordered by the court, that the report of the commissioners returned and filed in this case be, and the same is hereby ratified and confirmed, so soon as proper receipts of the parties are produced before one of the judges of this court, and that the commissioners or a majority of them make a sufficient deed in fee to the purchaser." On the 13th of June, 1816, the same majority of the commissioners made a deed of bargain and sale of the lot to the purchaser, "Julia Kean," with the following preamble:— "Whereas by a decree of the circuit court of the county of Washington, in the District of Columbia, sitting as a court of chancery, rendered in June term, one thousand eight hundred and fourteen, David Appler, David Ott, David Shoemaker, Samuel Hoyt, and Clotworthy Stephenson, were appointed commissioners, and they, or a majority of them were authorized and empowered to sell and dispose of a piece of ground, known and distinguished on the plan of the said city of Washington as lot numbered fourteen, in square numbered two hundred and ninety, being the real estate of Robert Tolmie, late of the said city of Washington, deceased. That in pursuance of the said decree the said David Appler, David Ott, and David Shoemaker, being a majority of the said commissioners did, on the thirtieth day of July, in the year of our Lord one thousand eight hundred and fourteen, sell and dispose of, to the above-named Julia, the above described lot or parcel of ground, for the sum of one thousand and seventy dollars; and whereas the purchase-money for the said lot of ground hath been fully paid and satisfied; and the said David Appler, David Ott, and David Shoemaker, being a majority of said commissioners are authorized and empowered by the said decree to execute a conveyance for the same, and to comply with the terms of the said decree, the said David Appler, David Ott, and David Shoemaker, being a majority, have agreed to execute these presents. Now this indenture witnesseth," &c. This deed was duly acknowledged and recorded.

Upon the facts above stated, and the sale and proceedings, and deed therein mentioned, it is submitted to the court to decide, whether the plaintiffs are entitled to recover the said premises.

Redin & Key, for plaintiffs.
C. C. Lee and Mr. Jones, for defendant.

CRANCH, Chief Judge. The title set up under these proceedings is said to be void. 1st. Because none of the heirs was of full age at the time of the sale. 2d. Because the sale was never ratified by the court. 3d. Because bonds for the purchase-money were not taken payable to each representative respectively according to his proportionable part of the net amount of sales; and 4th. Because the deed does not recite the commission and all the proceedings thereon necessary to show a good title.

1. Upon the first point, the fact is admitted by the state of the case, or necessarily inferred from the facts therein stated. Margaret, the eldest of the heirs, was only 17 years old when she was married in 1812; consequently could be only 19 at the time of the sale. But it is said that this was a judicial sale, made by order of this court; and the court would not have ordered the sale unless satisfied that one at least of the heirs was of full age. That it is a proceeding in chancery, and that a purchaser under a sale by a master, under a decree in chancery, has a good title unless implicated in fraud in the sale. 2 Schoales & L. 572. That a sale of land under execution on an erroneous judgment is good, although the judgment be afterwards reversed. That a judicial proceeding cannot be questioned collaterally. And it has been said to be immaterial whether the wife were of full age or not, as the husband was the "person entitled" to elect. and he is presumed to be of full age, unless the contrary appear. That he is "the person entitled" within the meaning of

the statute. That a purchaser (of full age) of an infant's share, would be entitled to elect, although the heir from whom he purchased, be an infant; and that upon such election the purchaser would take the estate in his own right. Stevens v. Richardson, 6 Har. & J. 156. On the contrary it has been argued for the plaintiff, that this is not a proceeding in chancery, nor in equity, but at law. That it is a particular proceeding authorized only in a particular case, and that all the circumstances which constitute that particular case must appear upon the face of the proceedings, or the court would have no authority to order the sale. That quoad hoc this is a court of limited jurisdiction. That it is a proceeding in derogation of the common law, and therefore must be construed strictly; and the following case have been cited: Williams v. Peyton, 4 Wheat. [17 U. S.] 77, which was upon a collector's sale for taxes; Jarrett's Lessee v. Cooley, 6 Har. & J. 258, which was a case of election under the eighth section of the "Act Directing Descents," 1786 (chapter 45); Wickes' Lessee v. Caulk, 5 Har. & J. 36, which was a case under the statute of Maryland, 1718 (chapter 18), "For Ascertaining the Bounds of Lands;" and Shivers v. Wilson, 5 Har. & J. 130, which was a case under the act of Maryland, 1795 (chapter 56), regulating the manner of issuing attachments. See, also, McClung v. Ross, 5 Wheat. [18 U. S.] 119, and Walker v. Turner, 9 Wheat. [22 U. S.] 549. It was also said, that it does not appear that the husband, Francis Beveridge, was of full age, and if he were he could only elect in right of his wife; and if she had no right to elect, he had none. That none but an heir could elect. That the husband is not "the person entitled" within the meaning of the statute. That he was not entitled to the intestate's estate, but to his wife's estate. There is much weight in those arguments.

It is an important question in this cause, whether the proceedings of this court upon a petition to divide the real estate of an intestate, under the act of descents, 1786 (chapter 45, § 3), be proceedings under a special authority delegated to this court in a particular case, or whether they be proceedings under its general and ordinary jurisdiction, as a court of law, or a court of equity. If the latter be the case, many things may be presumed which do not appear on the record, nor in the evidence produced; nor will evidence be permitted to contradict the presumption arising from the acts of the court as they appear upon the record. Thus, after the court has ordered a sale, in the exercise of its general and ordinary jurisdiction, it would be presumed that the court had satisfactory evidence of every prerequisite to justify the court in making the order, and such presumption would continue so long as the order of the court should remain unreversed. On the contrary, if the proceedings be under a special authority delegated to this court in a particular case, and not under its general juris-

diction as a court of common law or of equity, nothing material can be presumed. The person claiming title under such proceedings must show them to be regular, and in a case in which the court had jurisdiction, and was authorized to do what it has done.

By the Maryland act of descents, 1786 (chapter 45, § 8), the chancellor has original jurisdiction only in the case where the lands to be divided lie in different counties. If the land lie entirely in one county, the county court alone has jurisdiction of the case. This court therefore can exercise jurisdiction in the present case, only as being substituted for the county court. It is a special jurisdiction given to a court of law in a particular case.

The powers of the county court, under that act, are 1. To appoint the commissioners; and this upon application, they are obliged to do; they have no right to refuse. 2. To confirm or reject the report of the commissioners, in case they should report that the estate cannot be divided without loss to all parties. 3. To ratify or reject the proceedings of the commissioners in case they should proceed to make partition and allotment between the parties. Either party may appeal to the chancellor from the judgment of the county court.

The power to make the partition, and all the incidental powers, are by the act given directly to the commissioners. They derive no power from the court. They have a naked authority without an interest. Their powers must be as strictly executed as those of a collector of taxes, or any other public agent. The court cannot authorize any other person to make the division or the sale, and no sale can be made unless some one of the persons entitled to the estate be of full age. The commissioners, with a majority of the persons interested, are to determine whether the sale shall be for money or on credit; and if for money, the commissioners are to divide it among the heirs. The act of 1797 (chapter 114, § 6) provides that all sales directed by the eighth section of the act of 1786 (chapter 45), to be made, shall be made agreeably to the order of the court. This act does not necessarily repeal that part of the eighth section of the act of 1786 (chapter 45) which gives power to the commissioners, with a majority of the persons interested, to decide whether the sale shall be for money or on credit. There is enough left for the order of the court to operate upon, in deciding whether the sale shall be made at public or private sale, and in fixing the time and place of sale, and the notice which shall be given. The act of 1797 also provides that the sale shall not be valid until ratified by the court. Still, however, the power to sell is derived directly from the act of 1786 to the commissioners. It does not pass through the court, nor is the sale the act of the court. It is the act of the commissioners alone, under the authority of the law, not of the court. The act of 1786 is imperative. The words are, "then the es-

tate shall be sold, under the direction of the said commissioners or a majority of them, for money, or upon credit, as they with a majority of the persons interested who are of age, and the guardians of such as may be minors, shall determine." It leaves no discretion to the court—it requires no order of the court for the sale. The duty is imposed on the commissioners. It is true that the act of 1797 requires that all sales directed by the act of 1786 to be made, should be made "agreeably to the order of the court," that is, in such time, place, and manner, but not upon such terms as to cash or credit, as the court should order. The act of 1786 provides for the terms of sale, that is, whether for ready money or on credit; but did not provide for the time, or place, or manner of sale; it might be at public or private sale, or at long or short notice, or at any place the commissioners might appoint. In these respects, then, the act of 1797 requires that the sales directed by the act of 1786, to be made, should be made agreeably to the order of the court, in those particulars. The act of 1797 evidently recognizes the construction, that the sales were to be made by the commissioners under the act of 1786, and not under an order of the court. The act of 1786, as before observed, is peremptory, that the land shall be sold by the commissioners, if their judgment (that it cannot be divided without loss to all the parties,) shall be confirmed by the court. The judgment thus to be revised and confirmed or rejected by the court is not a judgment that the land should be sold; but that it cannot be divided without loss. The act of 1797, therefore, does not give the court any authority to decree, or to refuse, a sale. That clause of the act of 1786 (chapter 45, § 8) which says, "but if all the parties entitled shall be minors at the death of the intestate, the estate shall not be sold, until the eldest arrives to age," is a prohibition to the commissioners, who alone had the power to sell, and not the court, who had no power to decree a sale. All the acts of Maryland upon the subject, evidently consider the power of sale as vested immediately in the commissioners by the act of 1786, and as a power to be executed in pais. Thus the act of 1797 (chapter 114, § 6) says, "that all sales by the act to direct descents directed to be made," &c. So the act of 1799 (chapter 49), in section 1, says, "in those cases wherein it becomes necessary for the commissioners to make sale of the intestate's estates"; and in section 2, "in case the lands or estate shall be sold by the commissioners agreeably to the provisions of the said act"; and in section 3, "in all cases of sale made by the said commissioners," &c., "it shall be the duty of the commissioners," &c. The fourth section requires that bonds shall be taken "by the commissioners." The fifth section authorizes them to lay off the widow's dower; and the sixth section empowers them, with the assent of the widow, to sell the estate disincumbered of her dower. These powers are all vested by the statute directly in the commissioners, without the intervention of the court; and no power is given to the court, but to ratify or reject the acts of the commissioners.

The act of 1799 (chapter 49) provides for the payment of the expenses of executing the commission, and their allowance by the court. It makes it the duty of the commissioners, without any order of the court therefor, after ratification of the sale and payment of the purchase-money, to make a deed to the purchaser, conveying all the right of the intestate; and requires that the commission and proceedings thereon should be recited in the preamble of the deed. It also provides, that when the sale shall be on credit the commissioners shall take bonds for the purchase-money payable to each representative respectively, according to his proportion of the amount of sales. Before this statute, the commissioners had no power to make a deed, nor any interest which they could convey. Their deed would have been a mere nullity. The purchaser's title rested upon the matter in pais, connected with the record of such acts of the court and of the commissioners as were required to be entered of record. The matters required to be recorded were only, 1st. The judgment of the commissioners that the estate could not be divided without loss to all the parties interested, the reasons of such judgment, and the confirmation of that judgment by the court; and 2d. The partition actually made by the commissioners, in case they proceeded to divide the estate, and the ratification or rejection by the court of such partition. The sale, if made, was a matter entirely in pais, of which no report, nor record, nor ratification, was required to be made. The purchaser was left to make out his title, by proof of all the facts necessary to give jurisdiction to the commissioners, and to the court, as far as it had power to act in the case, and to show that the authority given by the statute had been strictly pursued and executed. If the commissioners made a deed it was of no value, unless as a memorandum of dates and facts, which might be susceptible of proof by evidence aliunde. In case of a sale under the act of 1786, the purchaser, to make out his title, was bound to prove that the ancestor died seized of an estate of inheritance, and intestate; that the parties entitled to the estate could not agree upon a division thereof, or that some person entitled to a part was a minor; that application was made to the court; that a commission was issued; that the commissioners took the oath required by the statute; that they determined that the estate could not be divided without loss to all the parties; that they made return to the court of their judgment, and the reasons upon which the same was formed, and the real value of the estate in current money; that their judgment was confirmed by the court; that all the persons entitled to elect

to take the whole estate and pay to the others their just proportions of the value in money, refused so to do; that the sale was made under the direction of the commissioners, or a majority of them, for money, or upon credit, as they, with a majority of the persons interested who were of full age, and the guardians of such as were minors, determined to be most advantageous to all concerned; that some one, at least, of the parties entitled, was of full age at the time of the sale; and, perhaps, that the purchase-money was justly divided among the several persons interested, according to their respective titles to the estate. The statutes of 1797 and 1799 have not altered the nature of the source of the power of sale, vested in the commissioners. They still derive it immediately from the statute of 1786. It does not flow through the court; and cannot be hindered or obstructed by the court, unless incidentally, by its refusal to appoint the time, place, and manner in which the sale shall be made, or by its refusal to ratify the same after it has been made. The power of sale is still an authority vested by law in the commissioners, to be executed by them in pais. "It is a naked power, not coupled with an interest; and in all such cases," (says Mr. Chief Justice Marshall, in delivering the opinion of the supreme court of the United States in the case of Williams v. Peyton, 4 Wheat. [17 U. S.] 79), "the law requires that every prerequisite to the exercise of that power must precede its exercise, or his act will not be sustained by it." And again he says, "It is a general principle, that the party who sets up a title must furnish the evidence necessary to support it. If the validity of a deed depend upon an act in pais, the party claiming under that deed is as much bound to prove the performance of the act, as he would be bound to prove any matter of record on which its validity might depend. It forms a part of his title; it is a link in the chain which is essential to its continuity, and which it is incumbent on him to preserve. These facts should be examined by him before he becomes a purchaser; and the evidence of them should be preserved, as a necessary muniment of his title." In Thatcher v. Powell, 6 Wheat. [19 U. S.] 127, Mr. Chief Justice Marshall again, in delivering the opinion of the court, says:—"We think otherwise," (that is, that the sale was void, and not merely voidable.) "In summary proceedings, where the court exercises an extraordinary power, under a special statute prescribing its course, we think that course ought to be exactly observed; and those facts, especially, which give jurisdiction ought to appear, in order to show that its proceedings are coram judice." See, also, Hartley v. Hooker, Cowp. 523.

What is there to prevent these general principles from being applicable to the present case?

1. It is said that this is a judicial sale, and that, in such cases, every thing necessary to the jurisdiction of the court, and validity of the sale, is to be presumed; and to this point was cited the Irish case of Bennett v. Hamill, 2 Schoales & L. 572. That was a case where the heir, after coming of age, sought, by petition, to set aside a sale made twenty years before, under a decree in equity at the suit of a creditor of his ancestor, suggesting a deficiency of personal assets, and praying for a sale of the real estate for the payment of debts. The petition suggested fraud between the creditor and the mother of the complainant and her advisers. The purchaser, however, was entirely ignorant of the fraud, and purchased bona fide for a fair price, and had obtained the legal estate from the person in whom it was outstanding at the time of the sale. Lord Redesdale, after much argument and consideration, finally decided that as the defendant, Hamill, was a bona fide purchaser, for a fair price, without notice or knowledge of the fraud, and had obtained the legal title, and had laid out $1,200 on the land, he ought not to be disturbed in his title; but that the complainant might pursue his remedy against the creditor, and the other parties concerned in the fraud. That case confirms the distinction before noticed, between the judicial act of a court in the exercise of its general jurisdiction, and the execution of a naked power under an authority given in a special case. In the case of Bennett v. Hamill, the sale which was sought to be set aside was made under a decree of a court of equity, in the exercise of its ordinary and general jurisdiction under the Irish law. All the presumptions were, therefore, in favor of the decree. But, in the present case, the sale was not made under the authority of the court in the exercise of its general jurisdiction, but under a special authority vested by law in certain commissioners; and, therefore, is not entitled to any presumptions in its favor. Every thing necessary to its validity must be proved. It is also said that a sale under a fi. fa. is valid, although the judgment be afterwards reversed for error. 8 Coke, 96b. But the reason given is, "for the sheriff who made the sale had lawful authority to sell; and, by the sale, the vendee had an absolute property in the term during the life of Alice, the wife; and although the judgment, which was the warrant of the fi. fa. be afterwards reversed, yet the sale, which was a collateral act done by the sheriff by force of the fi. fa., shall not be avoided; for the judgment was that the plaintiff should recover his debt, and the fi. fa. is to levy it of the defendant's goods and chattels; by force of which the sheriff sold the term, and the vendee paid money to the value of it. And if the sale of the term should be avoided, the vendee would lose his term and his money too, and thereupon great inconvenience would follow; that none would buy of the sheriff

goods or chattels in such cases, and so execution of judgment, (which is the life of the law,) in such case, would not be done." And in Id. 143a, the reason given is, "because the sheriff was commanded and compelled by the king's writ to sell it." In that case, the authority to sell was complete and perfect at the time of the sale; for an erroneous judgment remains in full force until reversed. But in the present case the question is, whether, at the time of the sale, the commissioners had authority to sell; and whether, in making the sale, they pursued their authority strictly. There is no analogy between the cases. In Drury's Case, 8 Coke, 142a, a "difference was taken and agreed between a thing collateral executory and executed; for when an erroneous judgment is given, and afterwards the judgment is reversed by a writ of error, collateral acts executory are barred thereby;" for, after reversal, the party may plead nul tiel record. But until the erroneous judgment be reversed, the party cannot take advantage of the error; for he cannot plead nul tiel record, although there be apparent error. And collateral things, executed before the reversal, remain in force, notwithstanding the subsequent reversal of the original judgment; and the reason is, because in the latter case the authority was complete at the time of the act done; and in the other case there was no authority.

There is also a difference between judgments which are erroneous and judgments which are void. The judgment of a court, in a case in which it has not jurisdiction, is void; and no act done under it can be valid. Borden v. Fitch, 15 Johns. 121. Thus in the case of Wise v. Withers, 3 Cranch [7 U. S.] 331, which was trespass by a justice of the peace against a collector of militia fines, the supreme court of the United States decided that, as the plaintiff was not liable to be enrolled in the militia, the court-martial had no jurisdiction in the case, and its judgment was void, and gave the collector no authority to distrain the plaintiff's goods. See, also, Bissell v. Briggs, 9 Mass. 462. All the cases rest upon the authority to do the act at the time it was done. The difference among them consists in the evidence required of that authority. In Kempe's Lessee v. Kennedy, 5 Cranch [9 U. S.] 173, 179, 184, the supreme court held, that when a court of general jurisdiction acted within the sphere of its authority, its proceedings were not examinable when coming before them collaterally; but that where the jurisdiction is limited, it must be shown upon the record itself that the court acted within the sphere of its authority. The case of Barney v. Patterson's Lessee, 6 Har. & J. 182, was an action of ejectment by a purchaser at the marshal's sale, by virtue of a fi. fa. issued upon a judgment of the circuit court of the United States, in an attachment upon two non ests, under the act of Maryland, 1750 (chapter 40). Many objections were made to the jurisdiction of the court, and to the regularity of the proceedings in the attachment. Mr. Chief Justice Buchannan, in delivering the opinion of the court of appeals of Maryland, said: "But, though the intervening of a term before the issuing of the attachment, and the negligence of the marshal, were irregularities in the proceedings, the judgment of condemnation is not therefore void, (whatever disposition might be made of it by an appellate court,) the circuit court being a court of record of competent jurisdiction, from whose decisions an appeal or writ of error lies to the supreme court of the United States, and is not an inferior court according to the technical sense of the term as used in England. It is not like the case of special and extraordinary powers given by statute to a court in relation to a subject-matter of which such court has no jurisdiction independent of the statute, but derives its authority to act upon facts arising in pais entirely from the statute giving the power, and prescribing the mode of proceeding. The act upon which the proceedings of the circuit court were founded, professes to give no new jurisdiction, but only to regulate and limit the powers of courts already possessed of full and complete jurisdiction of the whole subject-matter." There is no presumption in favor of a court of limited jurisdiction. Perkin v. Proctor, 2 Wils. 382. And "where, by statute, a special authority is delegated to particular persons, affecting the property of individuals, it must be strictly pursued; and appear to be so upon the face of their proceedings. Rex v. Croke, Cowp. 26, 29." The case of Perkin v. Proctor, 2 Wils. 382. was trespass against the assignees of Goodall, a supposed bankrupt, for acts done by the assignees under a void commission of bankruptcy; Goodall having been a victualler, and not a trader, liable to the bankrupt laws. The court of common pleas decided that the commission was not merely voidable, but void; and that all acts done under it, even before it was superseded by the lord chancellor's order, were absolutely void. The court said, "We are all of opinion that the commission of bankruptcy is void, and of no avail. The jurisdiction concerning bankrupts is confined to particular persons and cases; as that the person subject to a commission, must be a trader; must be indebted in such a sum; must do some particular act, &c. The court of chancery acts herein solely upon the application of the party petitioning, at whose peril the commission issues, and if he sues it out on any false suggestion the law gives a remedy against him to the party whose liberty or property is thereby invaded. There are a variety of commissioners whose power and jurisdiction are limited and confined, which, if they exceed, the law will give remedy against them. And where courts of justice assume a jurisdiction which

they have not, an action of trespass lies against the officer who executes process, because the whole proceeding was coram non judice. Where there is no jurisdiction at all there is no judge; the proceeding is as nothing; this is the very case of The Marshalsea, 10 Coke, 76a. The party in this case is no trader; there is no foundation to build a commission upon; the commissioners had no power at all. Where a rate is unduly taxed, the warrant of the justices of the peace for levying thereof will not excuse the church-warden, or overseer of the poor, who distrains for it. Nichols v. Walker, Cro. Car. 395. And it is like where an officer makes an arrest by warrant out of the king's court, which, if it be error, the officer must not contradict, because the court hath general jurisdiction; but here" (says Justice Croke,) "the justices of the peace have but a particular jurisdiction. The case of Terry v. Huntington, Hardr. 480, is a very strong case. In trover for goods levied by warrant of the commissioners of excise, the question was, if they adjudge low wines to be strong waters perfectly made upon the statute 12 Car. II. (chapter 23), whether an action lies against the officer; per Hale, Lord Chief Baron. The commissioners have only a stinted, limited jurisdiction, and if they exceed it, that does not take away the jurisdiction of this court. Special jurisdictions are circumscribed, 1. With respect to place, as a leet, or a corporation. 2. With respect to persons, as 10 Coke, 76a (the case of The Marshalsea). 3. With respect to the subject-matter of their jurisdiction; and the statute limits their jurisdiction in all these three respects; and therefore if they give judgment in a cause arising in another place; or betwixt private persons; or in other matters, all is void and coram non judice; as if they should adjudge rose-water to be strong water." The court also cited the case of Smith v. Bouchier [2 Strange, 993], in which an action for false imprisonment was maintained against the vice-chancellor of Oxford, who had issued his warrant upon oath of suspicion when, by law, he was not authorized to issue it but upon oath of belief; the whole proceeding was adjudged to be "coram non judice, and a mere nullity."

In the case of Wickes' Lessee v. Caulk, 5 Har. & J. 42, the court of appeals in Maryland, say, "It is a well-established principle of law, that the proceedings of any tribunal not having jurisdiction over the subject-matter which it professes to decide, are void; and it is equally well established that the proceedings of tribunals of limited jurisdiction, must, on the face of them, state the facts which are necessary to give them jurisdiction." "That the proceedings of tribunals, having no jurisdiction to decide the case, are not voidable, but void, is a proposition equally clear; and, among other cases. was established in this court in the case of Partridge v. Dorsey's Lessee [3 Har. & J.

302], at December term, 1813, where the court decided that a plaintiff, in an ejectment, might show that a decree of the chancellor, ordering lands to be conveyed in a case where he had no jurisdiction to make such a decree, was void, and therefore could give no title, though such decree had not been appealed from, or reversed. If the proceedings exhibit a case in which the commissioners who did act, had power to act, their award is final, until reversed in the manner prescribed by the act; but if, on the contrary, they themselves show that they had no jurisdiction, the whole must be considered as coram non judice, and therefore a nullity." The court of appeals, upon that ground, reversed the judgment of the court below, although a hundred years had elapsed since the proceedings were heard, before the commissioners, which now, for the first time, were adjudged to be void. The case of Shivers v. Wilson, 5 Har. & J. 130, was under the Maryland act of 1795 (chapter 56), relating to attachments. The garnishee had pleaded non assumpsit for his principal, and on the trial of the issue upon that plea, although the plaintiff was described in the proceedings as a citizen of the United States, the court below instructed the jury that the plaintiff could not recover, unless he satisfied them, by evidence, that he was a citizen of the state of Maryland, or of some other of the United States; to whom alone the statute gives the remedy by attachment; and, a man may be a citizen of the United States, and yet not be a citizen of any particular state of the United States. Mr. Justice Johnson, in delivering the opinion of the court of appeals, says, "On the part of the appellant it is contended, that as the court before whom the cause was depending, had a general, and not a limited jurisdiction over the matter in contest, no advantage could be taken of the plaintiff's incapacity to sue, except by a plea in abatement. No position of law is more clearly established than that a defendant in a cause, before a court of general jurisdiction, must, if he wishes to avail himself of the disability of the plaintiff to sue, do so by a plea in abatement; and no principle of law is more evident than that where the tribunal is of a limited jurisdiction, or the proceedings are particularly prescribed by a statute made on the subject, the course of procedure, so prescribed, must, on the face of the record, appear to have been, if not literally, at least substantially complied with; or the case must, by the proceedings, disclose itself to be within the limited jurisdiction." "On these principles rest the numerous decisions on the acts for marking and bounding lands, made by the late general court, and all the courts of the state, of original jurisdiction, and which have been universally acquiesced in. These decisions rest on the principle that where the course of procedure is prescribed by the statute, the proceedings

themselves must show their conformity with the act by which they are authorized, and that otherwise advantage of non-conformity, can, at any time, be taken." "The act of 1795 (chapter 56), under which the proceedings in this case are supposed to be protected, gives, it is true, full and entire jurisdiction in all cases of attachments coming within the purview of the act, yet that entire jurisdiction is confined to such cases as the act embraces. If the act comprehends the case at bar, then no exception to the disability of the plaintiff was available, except by plea in abatement; if, on the contrary, that act extends not to the case, the plaintiff had no right to recover, and the decision against him was correct. The act of assembly needs only to be read, to discover its limited operation. It gives not the right to every person to issue, or cause attachments to issue. Its provisions confine the remedy to citizens of this state, or of some other of the United States; and the manner in which they are to proceed, is, in detail, pointed out. The plaintiff, to succeed under that law, must come within its provisions. The plaintiff, to recover under that act, must follow its directions. The record before the court in this case, in no part of it, brings the plaintiff within that description of persons who had a right to issue, or cause the attachment to be issued. The right to condemn the property in favor of such a plaintiff is, by no law, vested in the court before whom the cause was tried, or in any other court." The judgment of the court below was affirmed.

These principles and authorities seem to be decisive of this case. The sale was the act of the commissioners, not of the court. All the parties entitled to the estate being minors at the time of the sale, the commissioners had no authority, but were expressly forbidden, by law, to sell. This objection alone is fatal. But if the commissioners had a power to sell, at the time of the sale, it is an equally fatal objection, that it does not appear in the proceedings that the sale was ever ratified by the court, as required by the act of 1797 (chapter 114). It is true, that there was an order that the report of the sale should be ratified and confirmed, "so soon as proper receipts of the parties should be produced before one of the judges of this court; and that the commissioners, or a majority of them, make a sufficient deed in fee to the purchaser. But it does not appear in the proceedings that such receipts were ever produced to the judge. And although a deed was afterwards made by the commissioners to the purchaser, yet as nothing material can be presumed in the execution of a special authority, the deed does not, in law, justify a presumption that the receipts were produced, especially as the deed, although required by law to contain a recital of the commission and the proceedings thereon, contains no recital of the fact

that the receipts had been produced to the judge, or that the sale had been confirmed by the court. It does not even recite the commission, or the proceedings thereon. It states falsely, that by a decree of this court sitting as a court of chancery, David Appler and four others were appointed commissioners, who were authorized to sell lot 14 in square 290, being the estate of Robert Tolmie, deceased, and to execute a conveyance for the same. Whereas the proceeding was not before this court, sitting as a court of chancery, but as a court of common law, being substituted for the county court of Maryland; and the decree did not authorize the commissioners to sell the lot, nor to execute a conveyance. There is nothing in the deed to show that it was a proceeding under the act of assembly, directing descents, and for the partition of an intestate estate. It does not state that Robert Tolmie died intestate and seized of an estate of inheritance in the property; nor that the parties entitled could not agree on a division thereof; nor that any of the heirs were minors; nor that application was made to the court for a commission; nor that the commissioners took the oath prescribed by the statute; nor that they determined that the estate could not be divided without loss to all the parties; nor that they made return of their judgment to the court with their reasons for such judgment; nor of their valuation of the estate; nor that their judgment was confirmed by the court; nor that all the persons entitled to elect to take the estate at the valuation had refused to do so; nor that the sale was made agreeably to the order of the court; nor whether the sale was for money or on credit; nor whether the money had been duly divided among the persons entitled to it; nor whether the bonds were taken payable to the respective heirs agreeably to the statute; nor that any of the heirs was of full age; in short, it does not correctly recite any one of the facts necessary to constitute a title in the purchaser, except the payment of the purchase-money. The deed, therefore, raises no presumption of the existence of any of those facts.

The court is of opinion. 1. That the commissioners had no authority to sell the property, because all the heirs were minors at the time of the sale; and that therefore the sale was void. 2. That the sale was not valid, because it does not appear to have been ratified and confirmed by the court. See, also, Shivers v. Wilson, 5 Har. & J. 132.

Verdict and judgment for the plaintiff.

Reversed by the supreme court (2 Pet. [27 U. S.] 157).

TOLSON (UNITED STATES v.). See Case No. 16,530

TOM (UNITED STATES v.). See Case No. 16,531.