By the Court. Duer, J.
The questions that we are required to determine in this suit, arise upon the last will, with its codicils, of James Roosevelt, deceased. The testator by his will, and by the second codicil, gave a portion of his real and personal estate, to his grandson, James Roosevelt Bayley; and the questions are, whether by the third codicil these provisions for the grandson have been wholly or in part revoked, and all the estate and interests which they embrace, given to the other defendants, the Union Theological Seminary. It is insisted, on the part of the grandson, that there is no effectual revocation, or if effectual, that it is only partial; while, on behalf of the Seminary, it is contended that the revocation is effectual and entire, and the gift to them co-extensive with that which is revoked. The executors have very properly asked the decision of the court upon these questions, which have been fully and ably argued by the counsel of the respective defendants, the real parties in interest. In order that our views in relation to them may be clearly and fully understood, an examination somewhat minute and critical of various provisions in the will and codicils, is deemed to be necessary.
By the second article, or clause in the will, the testator gives, devises, and bequeaths to his wife, his dwelling house, coach house, and grounds in the city of Hew York, and his house, farm, &c., in the town of Poughkeepsie, in the county of Dutchess, during her life, and also an annuity or yearly sum of §5000 in lieu, and bar of her dower, and of all claims upon his estate, and he directs his executors to set apart and reserve so much of his estate, real and personal, or both, as in their discretion, and with the consent of his wife, they may deem sufficient to produce a clear income adequate to the payment of the annuity, to be held and managed by them as a trust fund for that purpose, adding these words : “ and upon the decease of my said wife, to dispose of the same as hereinafter mentioned.” *97 Words which are of some significance, as evincing his intention to make a special disposition of the trust fund, from which the annuity was to arise. In the third clause, the testator gives similar directions to his executors, as to the setting apart and reserving from his real and personal estate, an adequate trust fund for the security and payment of an annuity of $800, to his daughter Susan; and in the fourth, similar directions for the security and payment of an annuity of $300 to the widow of his deceased son Richard ; and each of the clauses contains a reference to the future disposition of the trust fund which it directs to be raised. All these clauses were proper to be mentioned, from their connexion with other parts of the will, but no question has been raised as to the construction of either of them.
We now "come to the fifth article or clause of the will, upon the proper construction of which, the determination of the present controversy in a measure, depends. It is in these words : “ As to all the rest and residue of my estate, real and personal, whatsoever and wheresoever, I give, devise, and bequeath the same in three equal parts, to be divided as follows: one third part to my son Isaac, in fee simple; one third part to the trustees, hereinafter named, for the use of my son James Barclay; and the remaining one third part, in five equal shares, to be subdivided to James Roosevelt Bayley, Richard Bayley, Carlton Bayley, and William Bayley, in fee simple, one share each, and the remaining share to the said trustees, for the use of Maria E. Bayley, children of my deceased daughter Grace Bayley.” It is not denied that if this clause is to be separately construed, the words are sufficient to cany to the devisees and legatees, every estate and interest, present or future, vested or contingent, not disposed of expressly or by implication, in other parts of the will, and consequently, that they are sufficient to cany the reversion in fee upon the real estate devised to the widow, and the reversionary interest in the trust funds set apart for the payment of the annuities; but it is contended that this interpretation is modified, and greatly restricted by subsequent provisions in the will, so that the words “ rest and residue of my estate,” as here used, must be construed to mean only that portion of his estate which the testator believed would remain as a *98 subject for immediate distribution, independent of the reversion in fee of the real estate, and after the setting apart of the trust funds and the payment of debts and legacies; and upon full consideration, it is this limited interpretation that we feel constrained to adopt. We are persuaded that the words “rest and residue of my estate,” are used in this clause exactly in the same restricted sense which they manifestly bear in that which immediately follows.
In the sixth clause, the testator directs his executors, within a convenient time after his decease, after having set apart so much of his estate as might be necessary for the payment of the aforesaid annuities, and of the legacies thereafter to be mentioned, and the payment of his debts and funeral expenses, to make a schedule and estimate of all the “rest and residue of his estate, real and personal,” and to proceed to make a division and distribution thereof, to his before named residuary legatees, taking into consideration the advances made to them respectively. The provisions of this clause are somewhat more minute and special than we have stated, but we have given their substance and meaning. It is plain that the “rest and residue” of the estate, of which the division and distribution are here directed, is just as certainly exclusive of the capital of the trust funds, as of the moneys to be applied to the payment of debts and legacies, since it is only after the separation of. that capital from the bulk of the estate, that the division is to be made; and we add, that it seems to us nearly as evident, that this and the preceding clause, relate to the same subject, and are connected with and dependent upon each other1, the object of that we are now considering, being to carry out in its necessary details, the general devise contained in the former. The fifth clause declares the persons to whom the residuary estate shall pass, and the shares into which it shall be divided; the sixth describes and defines that estate, and directs the time and mode of its distribution. The first tells us who shall take and in what proportions ; the second, what and when, and how they shall take. The immediate sequence of the clauses, the necessity of the second to the completion of the devise contained in the first, and the terms in which both are expressed, suggest this as the true and natural *99 construction; and had we any doubts that, in adopting it, we follow the mind of the testator, they would be removed by the provisions in the seventh clause or section, to which we shall next advert.
In this seventh section the testator gives, devises, and bequeaths the dwelling-house, <fcc., in this city, upon the decease of his wife; and upon her decease, and that of the other annuitants respectively, all those parts of his estate which he had directed to be set apart for the payment of their respective annuities, in these words—“ unto the same persons and in the same proportions and shares, and subject to the same trusts as my residuary estate, so called, as mentioned and set forth in item fifth of this will, and I do direct a like division, partition, and distribution thereof to be made, if practicable, on the happening of each of the last above mentioned events.” These provisions at once suggest a question as to the object or purpose of their insertion. It was proper that the testator should direct a division of the property which they ’embrace, upon the death of his wife, and the other annuitants, but why it should have occurred to his mind to make that property the subject of a new and separate devise, if it were in fact already devised, it is not easy to understand. If he meant that the words “rest and residue of my estate,” in the fifth item of his will, should be understood in their largest sense, as comprehending every future as well as present interest, he knew that such a devise was absolutely useless ; he knew that it expressed no more than he had already said, and that omitting it wholly, the meaning and operation of his will would remain unaltered; it is, therefore, unreasonable to suppose, that had such been his meaning and understanding, the provisions in this seventh section, if we except the direction to his executors to divide the property, would ever have been made a part of his will. Ko rule of interpretation is more plainly founded in reason and good sense, than that which forbids us, in construing a will or any other instrument, to regard any proposition, sentence, or even word, as insignificant or superfluous, to which a distinct and consistent meaning can be attached; and the rational conclusion, therefore, is, that the provisions now in question were inserted in the *100 belief that their insertion was necessary to give a valid title to the residuary legatees to the property which they embrace, and if so, they are a certain proof that the testator had not intended to give the same title by any previous devise; they are in effect a declaration that the words “ rest and residue of my estate,” in the fifth item of his will, were used by him, and were meant to be understood, in the .restricted sense that we have adopted.
It may, however; be said that although these provisions were not in fact necessary, nor believed to be so by the testator, he may yet have directed their insertion, ex dbtmdmiU emítela, the fear that otherwise his intention might possibly be mistaken; but to such a conjecture, for in reality it is nothing more, we cannot listen. The' section contains not a single word to warrant even a suspicion, that such was the object of the testator; and had it been, we think it would have been rendered evident by a difference in the form of expression; he would not have said, “ I give, devise, and bequeath,” &c., terms strictly appropriate to a new and independent devise, without intimating that they were, in truth, only an explanatory repetition of a prior gift. He would not have said, “ I give, devise,” &c., “to the same person, and in the same proportions, &c., as my residuary estate,” thus plainly marking the distinction, in his mind, between that estate and the property here given. It would be absurd to say, that the same disposition shall be made of two subjects that in reality are not distinct. It would be absurd to say so, if one of the subjects between which this false distinction is made, was known, and was intended to include the other. It is true, that the testator adds to the words “ my residuary estate” the words “ so called,” but the addition, far from weakening, strengthens and completes the argument; for with this addition the entire sentence is equivalent to saying, “ I give, devise, &c., to the same persons, &c., as that, which in the preceding clauses of this will, I have called my residuary estate;” it being evident that the words “ so called” can only mean so called in the will itself, not by other persons, or in any other instrument. Even should it be thought that the expressions “ so called” imply an admission that the terms “ rest and residue of *101 my estate,” in the fifth item of the will, had been improperly applied to only a portion of that estate, they are equally an admission that it was, in this improper and limited sense, that the terms had been in fact employed, and were meant to be understood.
Again, the testator, after devising the reversionary estate and interest to which this section relates to the same persons as his residuary estate, directs his executors to make a like division, partition, and distribution thereof. Like what? Evidently a like division of the one as of the other; a like division of the property here given, as of the residuary estate before devised; thus plainly treating the residuary estate which he had devised, and that which he had ordered to be divided, as identical.
The seventh section in the will contains other provisions which, as having a bearing upon the argument, it will now be proper to notice. So far the testator has made no specific disposition of the reversion in fee, upon the decease of his wife, of the house and farm in Dutchess County, which he had devised to her during her life. He makes that disposition by devising the reversion “ unto his grandson James Roosevelt, his heirs and assigns for ever, if he be living at the time of her decease, and if not, to his lawful issue.” It is plain that each of the alternative remainders, here given, is contingent. Heither is to take effect unless the grandson, or in case of his death, his issue, shall be living at the time of the death of the widow. Another contingency, therefore, that of the death of the grandson without issue, in the lifetime of the widow, it would seem, remains to be provided for; that provision, however, has already been made, if the expressions “ rest and residue of my estate,” in the fifth item of the will, are to be understood in the comprehensive sense which, when the intent of the testator is not otherwise manifested, the law attributes to them. An imrestrioted residuary devise, it is established by numerous decisions, carries every estate and interest, however contingent or remote, that would otherwise descend to the heirs of the testator. (Cook v. Gerard, 1 Lev. 212; Wheeler v. Waldron, 3 P. Will 322; Doe v. Clark, 2 New Rep. 343.)
Had the testator intended that upon the happening of the *102 contingency that has been stated, the death of his grandson, James Roosevelt, without issue, the reversion in fee of the Dutchess County estate should become vested in his residuary devisees, by force of the devise in the fifth clause of his will, no addition was necessary to be made to the words in the seventh, that have already been quoted. He has shown, however, that such was not his intent, by adding the words “ and if there be no such issue, then to the same trusts as my residuary estate,” making again a distinction between his residuary estate and the reversion here given, and rendering it evident that in his judgment this reversion, unless specifically devised, would have descended to his heirs at law.
It is admitted in the points on behalf of The Union Theological Seminary, that the house and farm in Dutchess County are excepted from the devise of the residuary estate in the fifth clause of the will; and we can only understand the admission as meaning, that the ultimate reversion in fee is so excepted, since there is no other estate or interest, that the words of the devise could possibly be construed to embrace, the immediate estate for life being given to the widow, and the first remainder in fee to the grandson, James Roosevelt, and his issue. It is, .however, a necessary consequence of this admission; that the words of the residuary devise must be understood in a more limited sense than the law generally assigns to them, and we apprehend that there is no limitation to which the terms of the will and the intent of the testator, as collected from his language, can possibly direct us, except that which our examination of the provisions of the will has constrained us to adopt.
To the observations that we have made, it remains only to add, that we cannot doubt that when the testator, in the second, third, and fourth clauses of his will, declares that the trustees, on the death of each annuitant, shall dispose of the trust funds as hereinafter mentioned, he refers to the special provisions in the seventh clause, and not to the general devise in the fifth, which contains no mention of the trust funds, and requires no act of the trustees to render it effectual. This general devise was evidently meant to take effect as an entirety, immediately upon the death of the testator, and could not therefore have been meant to in- *103 elude a further disposition to he made hy the trustees upon the decease of the respective annuitants.
There are no other parts of the will to which, for the purposes of this decision, it is necessary at present to refer, and our conclusions are, that the devise to the defendant, James Roosevelt Bayley, in the fifth section, is a specific devise of one fifteenth of the residuary estate, as defined and directed to be distributed in the sixth, and consequently is exclusive of the future estates and interests which are devised to him in the seventh, or to which he is or may become entitled under any other provision or disposition in the will. We pass now to the codicils.
By the first codicil, the testator adds $1,000 to the annuity to his wife, making the whole annuity $6,000, instead of $5,000, which sum he orders to be paid to her annually, as directed in the second section of his will. The effect of these last words is to make those provisions in the second section, which enjoin the executors to set apart a sufficient portion of the real and personal estate as a trust fund for the payment of the annuity, applicable to the annuity as increased by the codicil, and consequently, have rendered it the duty of the executors, to enlarge in proportion, the capital of the trust fund; a duty which the bill alleges they have performed, by setting apart so much of the personal estate, as in their judgment, is sufficient to produce a clear annual income of $6,000. It is obvious that the additional capital thus required must have been withdrawn from the residuary estate to which the fifth and sixth sections of the will refer, and consequently, that the share in that estate of each residuary legatee has been proportionably diminished. The testator, in this codicil, makes no disposition to take effect upon the decease of his wife, of the additional capital thus withdrawn, nor was such disposition necessary. The execution of the codicil was a repuhlication of the will, and the effect of this republicaiion was, to enlarge the operation of the general words in the seventh section, which must now be construed to embrace the entire capital of the trust fund, the income of which is to be applied to the payment of the widow’s annuity during her life ; hence the residuary interest in the addition which the first codicil has made to this capital, has passed to the residuary legatees, *104 as included in the devise and bequest in the seventh section, and not as a part of the residuary estate, to which the preceding sections alone refer.
In the interval between the first and second codicils, one of the sons of the testator, James Barclay Roosevelt, died without issue, and his death was the occasion of the second codicil; and that the observations which this codicil suggests and requires, may be properly understood, its terms must be literally recited. They are as follows: “Whereas I, James Roosevelt, by the fifth item of the annexed will and testament, have directed all my residuary estate to be divided into three equal shares, and distributed accordingly; and whereas since the execution and publication of said will, my son, James Barclay, to whom one of the said shares (or to whose use) was given, has departed this life, leaving no lawful issue. How, I do, by this writing, which I hereby declare to be a codicil to my said will, to be taken as a part thereof, declare and direct, and it is my will that my said residuary estate, instead of being divided into three shares and distributed as aforesaid, that the same be divided into two equal shares and distributed as follows, viz. One share to my son Isaac, and the other share to the said children of my said deceased daughter, Grace Bayley, in the same manner, and subject to the same restrictions and trusts, in respect to the said Maria E. Bayley, in respect to the share she will receive by this codicil, as declared in said fifth item, in regard to her. And I do hereby devise and bequeath the said residuary estate accordingly, expressly subject, however, to any and all codicils to my said last will, bearing date and published previously to this date, which may be in existence at the time of my decease.” Were we at liberty to indulge in speculation, we should say that it is not improbable that the. intention of the testator, in this codicil, was to divide equally between his son Isaac and the children of his deceased daughter, the whole share, estate, and interest, future or contingent, as well as immediate and vested, to which James Barclay, had he survived his father, woidd have been entitled under any of the provisions of the will; but if such were really his intention, we are forced to say he has failed to execute it, “ Quod wlmi non dixit” The disposition which *105 he actually makes is confined by terms which are not susceptible of any other construction, to that residuary estate, which, by the fifth item in his will, he had directed to be divided into three equal shares; and that estate, we have already decided is the same that in the sixth section of his will he directs to be distributed within a convenient time after his decease, and it is impossible for us to give to the words of the codicil a larger construction than they certainly bear in the will itself. The expectant fee in the real estate devised to the wife for her life, and the reversionary interest in the trust funds, created for the payment of the annuities, are not considered by the testator in his will as parts of his residuary estate, and we have no right to say that he meant to comprehend them as such, in a codicil which refers expressly and exclusively to the residuary estate, as described in the will. It is true, that in construing a will, we are bound to effectuate the real intentions of the testator; but in all cases, his intention must be collected from the words that he employs ; and we cannot set aside the meaning which they plainly express, in order to substitute an interpretation which, however probable the reasoning upon which it rests, is in truth, merely conjectural. It is a necessary consequence of the limited construction that we are constrained to give to this second codicil, that the devises and bequests to James Barclay Roosevelt, or more properly to the executors as his trustees, contained in the Jth and 9th clauses of the will, have become lapsed by his death, and consequently, that every estate and interest which they embrace, has passed to the heirs at law, or next of kin of the testator. To this extent, the testator has died intestate, and no claim to any share in this portion of his property can be set up under his will and codicils, either by the defendant James R. Bayley, or by the Union Theological Seminary.
Upon the other question that was raised upon the argument as to the construction of the second codicil, we entirely agree with the counsel for the Seminary, that the codicil operates, not as a revocation, but as an enlargement of the devise and bequest contained in the fifth section of the will. The testator takes from his residuary legatees no portion of that which he had *106 before given, but, in consequence of the death of one of them, augments his bounty to the survivors. Had he said that the share in the residuary estate of his son James Barclay, should, in consequence of his death, be equally divided between his son Isaac and the children of his deceased daughter, there would have been no room or pretext for the assertion that the fifth section of the will was wholly or partially revoked; but such is exactly the effect of the devise in the codicil as it stands, and we cannot regard a distinction which, as it neither affects the intention of the testator, nor the operation of the codicil, is evidently and purely verbal. We therefore hold that, had no other codicil been added, James E. Bayley would now be entitled, under the fifth section of the will, to one fifteenth of the residuary estate, as defined in the sixth, deducting therefrom the capital withdrawn by the first codicil; and under the second codicil would be entitled to one tenth of another third, that is, to an additional one thirtieth of the whole.
We have now reached the third, last, and most important codicil, the origin and main subject of the present controversy; but the construction of which, it will be seen, has been, in a great measure, determined by the observations that we have already made. It contains, by way of recital, a declaration of the motives by which the testator was governed in making it a part of his will; but omitting this declaration, we shall state in the first instance, our construction of the actual devise, and then inquire whether this construction ought to be, or can be, affected by the insertion of the introductory clause we had omitted. Omitting this clause, the codicil reads as follows: “ Whereas, in the fifth section of my last will and testament, bearing date the 2d day of September, 1811,1 have devised and bequeathed to James E. Bayley, one of the sons of my daughter Grace, deceased, a .portion of my estate, I do therefore, by this codicil, which I do hereby declare to be a part of my last will and testament, to all intents and purposes, and to be taken as such, annul and make void the aforesaid devise and bequest, and do devise and bequeath the portion so given him by my last will and testament, to the Hnion Theological Seminary in the city of Hew York.” It is certain that no ambiguity is here to be *107 detected, nor any question to be stated, that we have not in effect decided. The testator takes from his grandson that portion of his estate which he had given him by. the fifth section of his will, and nothing else or more ; he leaves untouched the reversionary estate and interest, which, as constituting no j>art of his residuary estate, he had made the subject of a separate devise in the seventh section; and he leaves equally untouched, the addition which he had made to his grandson’s share in the residuary estate by this second codicil. The words “ the aforosadd devise and bequest,” can only refer to the devise and bequest in the fifth section of the will, for no other had been mentioned; and the words, “ the portion so given Aim,” can only mean the portion given him by that devise; for not only has the word “ so ” this relative force, but it is plain that no more was mearnb to be given to the Seminary than is taken from the grandson. If the revocation is limited, so must be the gift.
We have already said, that had the second codicil been the last addition to the will, James R. Bay ley would now be entitled, under the fifth section, which the second codicil does not revoke, to one fifteenth of the residuary estate, as defined in the sixth ; deducting the capital withdrawn by the first codicil. This, then, and this only, is the portion of the estate that the testator here takes from him; and that such is the true and necessary construction, appears to us so exceedingly clear, that we cannot believe that it would ever have been denied or doubted, had the third codicil contained no more than we have already read. The insertion of the clause which we have omitted, is probably the sole cause of the present litigation.
It has been urged, however, that without adverting to the introductory clause, the manifest intent of the testator requires that the words, “ fifth section of my will,” should receive a wider and more liberal interpretation than we have given. But if we omit the clause in question, we can find no words from which this supposed intent can be collected. We have shown that they are not to be found in the will, or in the first or second codicil; and if not there, they are certainly not to be found in the present codicil, as we have read it. It is undoubtedly true, that the *108 second codicil was a republication of the original will; but we are unable to perceive how the argument that we reject is helped by this admission, since it by no means follows that by such republication, the specific devise and bequest in the fifth section of the will, were in any respect altered or enlarged. It has been most justly said, that the republication of a will never alters the sense of its original words, but can only extend the operation of such as are general. (Barnes v. Crowe, 1 Ves. Jun. 492.) Thus a general residuary devise, when the will is republished, has been construed to embrace after purchased lands, but it has never been supposed that a mere republication can alter the proportionate shares of the residuary devisees. We believe, it may be laid down as a ride from which there is no exception, that a specific devise or bequest—specific either as to the amount, the property, or the share that is given—can never be enlarged by the republication, without change,.of the will in which it is con tained. If the testator, in the present case, had bequeathed to James R. Bayley, in the fifth section of his will, a definite sum of money, say $1000, and in the second codicil had made a similar bequest of an additional and equal sum, it would never have been contended that, as a consequence of the republication of the will, the original bequest should be construed to embrace the whole sum of $2,000, so that by the revocation of the section in the will the codicil would also be revoked, or that the gift to another of the sum given by the will, would carry with it the sum given by the codicil. It seems to us quite as unreasonable to say that the revocation of a specific devise and bequest, in a will, of one fifteenth of a residuary estate, referring expressly to the clause of the will in which it is contained, can be held to imply a revocation of a devise and bequest, in a codicil, of an additional one thirtieth in the same estate, upon the sole ground that the codicil republished the will.
It remains next to inquire whether the limited, but inevitable construction of the third codicil that we have adopted, can be altered or enlarged by the insertion of the introductory clause, which, so far, we have designedly omitted. That clause, which must be inserted as a part of the recital following the words “ portion of my estate,” and preceding the words “ I do there *109 fore,” is as follows: “ And whereas, James E. Bayley, once a minister of the gospel in the Protestant church, has renounced the faith of his fathers, and is now a priest in the Eoman church, and as I deem it neither just nor right that any part of the property, that God has given me, should be instrumental in building up a faith which I deem erroneous and unholy, I do therefore, &c.” Let it be admitted that we have here an explicit declaration of the intention of the testator to deprive his grandson of all the benefits he might otherwise have claimed under the will and codicil, by revoking every devise and bequest which they contain in his favor, it is nevertheless certain that an intention, so declared, doés not execute itself, but that apt words of positive revocation must follow to render it operative and effectual. If the codicil contained nothing more than .this declaration, standing alone, it would be simply an expression of resentment and a threat of punishment; it might be referred to as evidence of the feelings of the testator, but could never be relied on as proof of his act; it would be a preamble without an enacting clause; and as a preamble is not a statute, so an introductory clause is not a will. In the one case the intention of the legislator, in the other that of the testator, may be fully declared, but in neither can a court of justice supply the words by which alone the intention, so declared, can be rendered binding and effectual. Judges have no more the power to make a will than a law; a truth often forgotten, but never denied. The intention, therefore, which the testator is supposed to have declared in this codicil, of depriving James B. Bayley of all that he had before given him, must remain unexecuted, unless, in other parts of the codicil, words, that without violence may be construed as giving effect to that intention, are to be found. Where then are we to find these necessary words ? Which are they ? None other have been or can be quoted or relied on, but those which wé have already shown are not susceptible of such an interpretation, none but those which are clear and unambiguous in the expression of a different intent. What then are we required to do, in order to render the devise to the Seminary as extensive as is desired ? We are required either to say that the words “ in the fifth section of my will, dated the 2d of September, 1841,” mean not only *110 any and every section, of the same will, by which anything is given to James E. Bayley, but also every similar provision in a codicil, dated the 16th of August, 1842; or to add to the words the fifth section of my last will, “ and in the seventh, eighth, and ninth sections thereof, and in the second codicil thereto,” or admitting these words to have been inserted by mistake, to strike them out entirely and supply their place by such as we may judge to be necessary. We are satisfied that we have not the power to comply with either of these alternative requests, and it is a power which we dare not assume, since no principle can be stated, or precedent cited, to justify its exercise. It would be a violence to language and a shock to common sense, to say that the specific words, “ the fifth section of my will,” can be understood in the extended sense we are required to give them; nor can we make any addition to words which, as they stand, exhibit a full and consistent meaning; since it is only when the sense is manifestly imperfect or is hopelessly obscure, or is directly inconsistent with other express provisions in the will, that such an addition is ever permitted. (Doe v. Micklen, 6 East 486; Doe v. Turner, 2 Dow. and Ry. 386; 1 Jarman on Wills 427, 437.) Still less, can we be authorized to say that the descriptive words, “fifth section of my will,” were inserted by mistake, when we find that there is in reality a subject to which, with perfect truth, they can be applied. Without going into the cases, we state the rule as universal, that it is only when descriptive words are in fact untrue, and their falsity would vitiate or render ineffectual the provision or clause in which they are found, that a court, either of law or equity, can listen to the allegation of a mistake and rectify the error.
We readily admit that it is our duty, in all cases, so to construe a will as to carry into effect the real intent of the testator, so far as his intent may be collected from the whole will, and is consistent with the rules of law (1 E. 8. 748, § 2), but as we cannot carry into effect an intent which is not to be collected from his words, so we cannot carry into effect an intent which, although declared, requires other words to render it capable of execution. In the brief and expressive phrase of Lord Hardwicke, “ the intent of the testator is one thing, its execution by *111 him another.” (Gregson v. Atkinson, 1 Wilson 334.) The first may he clear, the second incurably defective. With still less reason can it be asserted, that we may carry into effect an, intention which, although declared, is contradicted by the words by which it is alleged to be executed; nor will such a declaration justify us in giving to those words a meaning different from that which they manifestly bear. If there is any established rule in the interpretation of wills, it is that introductory words, declaring the general intent of a testator, can never alter the sense of a positive devise, so as to give a meaning to its terms, corresponding with the intent declared, but differing from that which they plainly express. When the words of the devise are obscure or ambiguous, the introductory clause may be justly invoked to aid, perhaps control their interpretation ; but when they are so clear and explicit as to admit but one interpretation, that interpretation must be followed, and the declaration of an opposite or different intent be wholly disregarded. There are numerous cases in which this rule has governed the decision, but the few that we shall select will be sufficient to prove its existence and show its application. In Hogan v. Jackson, (Cowper 306,) the general rule is laid down by Lord Mansfield in these words: “ Introductory words cannot vary the construction of a devise so as to enlarge the estate of a devisee, unless there are words in the devise itself sufficient to carry the interest contended for.” And in the subsequent case of Denn v. Gaskin, (Cowper 657,) his lordship and the other judges of the King’s Bench, adhered to this rule, although upon special grounds they were strongly pressed to depart from it. In this case the introductory words to the will were, “ As to all such worldly estate as it has pleased God to endow me with, I give and bequeath as follows words plainly evincing the intention of the testator not to die intestate as to any portion of his estate. He then devised to three nephews, certain houses and lands, comprising all his real estate, but without words of inheritance or limitation ; and after certain specific legacies, he devised to the same nephews, “ all the rest of his goods, chattels, and personal estate,” thus showing that he supposed the real estate to have been fully disposed of. The judges were all of opinion that it *112 was the clear intention of the testator to disinherit the heir at law, in other words, to pass his whole estate, by his will, by giving a fee to the nephews ; but they held that the words in the devising clause were not sufficient to enable them to carry this intention into effect, and that these words could not be enlarged or altered by a reference to the introductory clause; and consequently, that the nephews took only a life estate in the lands, and only the rest of the personalty by the residuary clause.
In Frogmorton v. Wright, (3 Wilson 414, S. C. 2 Blackstone 889,) the intent of the testator to disinherit the heir and dispose of his whole estate by his will was, if possible, still more apparent. The prefatory words were, “ as touching the disposition of my temporal estate, which it hath pleased God Almighty to bestow upon me, I give and dispose thereof as followeth then follows in the will, a devise of two houses to his nephew, omitting the words “ and to his heirs,” and a bequest of five shillings to the heir at law, plainly showing he meant it to be all the heir should take; but the will ends without a residuary clause. The judges, as in the former case, had no doubts as to the intention of the testator, but held that they could give to the nephew only an estate for life.
Perhaps the strongest case is Doe v. Allen, (8 Term Rep. 497.) The testator prefaced his will by the words, “ As to the real and personal estate it has pleased God to bless me with, I do dispose of the same as follows." He then devised all his lands and tenements, without any exception, but without any words of limitation, to William Allen; and also devised to him all the residue of his personal estate, evidently in the belief that all the real had been already devised; but the court held that the word “ estate ” could hot be imported from the introductory clause into the principal devise, so as to vary its construction, and that the residuary clause could not be altered, so as to embrace the reversion in fee. In Smith v Coffin, (2 H. Black. 444,) the question was, whether a residuary clause was confined to the personalty, or might be construed to embrace in addition, the real estate ; and the words of an introductory clause, rendering apparent the intention of the testator to dispose of his whole *113 property, were very properly used to aid and enlarge the construction: but the express ground of the decision was, that the words of the devise were ambiguous, and were in themselves capable of being understood in the largest sense; and hence Mr. Preston, (2 Preston on Estates, 202,) refers to this case as proving that it is only when the words of a devise may be understood in two senses, that an introductory clause can avail to determine the construction. To the cases we have cited, we add Right v. Sidebotham, (Douglas 759;) Child and Wife v. Wright, (8 Term R. 64;) Doe v. Child and Wife, (1 New R. 335;) and especially the very recent case of Doe v. White, (1 Exchequer R. 525.) This last case going- beyond all the preceding, in holding that a positive devise cannot be altered by a reference to declaratory words, in any other provision of the will, whether prior or subsequent in order.
It would be a great mistake to suppose that these rules of interpretation have not been followed in the United States : the cases in our own courts, although none are to be found in the reports of this state, are quite as decisive, the language of our judges just as explicit. In Busby v. Busby, (1 Dallas, 226,) where the introductory words were, “ As to what worldly estate I am blessed with, I dispose thereof as follows,” the supreme court of Pennsylvania held that they could not operate to enlarge a life estate into a fee. In Lambert v. Payne, (3 Cranch, 131,) Mr. J. Washington recognises the general rule in saying that an introductory clause, declaring the intent of the testator to dispose of his whole estate, will not enlarge the operation of words that in their legal construction give only an estate for life. And in Lippett v. Hopkins, (1 Gallison, 454,) although Mr. J. Story, upon the peculiar words of the devise, decides the case in favor of the devisee, he yet expressly admits, “That words declaratory of a general intent, although they may aid in the construction of doubtful and obscure clauses, can never be permitted to supply material defects, or convert a life estate into a fee.” The most important and instructive case, and the last we shall cite, is Beale v. Holmes, (6 Harris and Johnson, 205,) in which Chief Justice Buchanan, in a very lucid and masterly opinion, reviews and analyses nearly all the cases that have a bearing upon the *114 subject; and in the result arrives at the conclusion, that although the intention of a testator is in all cases to be consulted, and to govern the construction of his will, when there is anything open to construction, yet when the words of a devise have a fixed and definite meaning, they cannot be enlarged by a mere declaration of the intention of the testator to give a larger estate than they clearly convey. If the truth of this position must be admitted —of which we can have no doubt—its application to the present case is obvious and conclusive. If a mere declaration of a more general intent, cannot enlarge the estate of a devisee in the property he is to take, it cannot enlarge the property itself. The material subject of a devise, when clearly defined, can no more be changed than the interest in that subject which the devise purports to convey ; and if a specific devise cannot be thus enlarged, a revocation just as definite and specific, upon which the devise is founded, must be just as exempt from alteration. There are no reasons applicable to any one of these cases, that are not plainly applicable to every other: they are the same in principle, and differ only in words.
We are quite aware, however, that a material distinction may be thought to exist between the present case and most of the decisions that we have quoted and relied on. It may be said, that in each of the English cases that have been cited, and in every similar case to be found in the English reports, the decision was governed by the inflexible rule of the common law, which requires words of limitation as necessary, in all cases, to create or convey a fee; and that it was solely in obedience to this rale that the intention of the testator, as declared in the introductory clause of his will, was disregarded. Our conviction, however, is widely different; and a few remarks will suffice to show the error of the interpretation we reject. When the decisions in question were made, it had long been settled that the strict rule of the common law is not applicable to the construction of a will; but that in a devise, any words that clearly indicate the intention of the testator to pass his whole estate and property in lands, and not merely the lands themselves, have the same force as express and technical words of limitation. Hence the words “ estate,” and “ property,” and *115 “ interest,” and even “ effects,” had each been held to pass a fee; but when the devise contained neither words of limitation nor words of - equivalent force, it was held to be upon its face only an estate for life, as much so as if the words “ for or during life ” had been a part of the devise. Hence the true import of the decisions that we have quoted is, that an estate for life is not to be converted into a fee by a reference to the terms of an introductory clause, although those terms, if introduced" into the devise itself, would unquestionably have that effect, which is in ' effect saying, that a positive devise is not to be controlled or overruled by a mere declaration of an. opposite intent. In this state, words of limitation are no longer necessary to create a fee; yet should a testator, commencing his will by declaring his intention to dispose of his whole estate, proceed to devise “ by express terms ” only an estate for life, we apprehend that no court of justice would venture either to strike out the words .“ for life,” or say that they ought to be construed as passing the fee; and if -not, it is impossible to say that we have the power either to strike out the words, “ in the fifth section of my will,” or vary the construction of which they are alone susceptible.
Hor is the rule which forbids the alteration of a positive devise, by force of an introductory clause, to be regarded as arbitrary and merely technical; for if it were so, notwithstanding the authority upon which it rests, we should be.forced to reject it. Under the provisions of the revised statutes, it is the real intention of a testator, without regard to technical words or technical rules, that judges are now bound to effectuate. The rule, however, that we have labored to establish, has so clear a foundation in principle, that had there been no evidence of its prior existence or observance, we should not have hesitated to adopt it. A specific devise—specific as to either the estate or interest, or the property or share that it gives—is just as certain evidence of the intention of the testator, that the devisee shall take no more than that which is given, as any general declaration can possibly be of a different intent. In every such case, therefore, the declaration and the devise contradict each other, and either both must be ineffectual from the uncertainty they create, or the *116 intention which is expressed in the one must he sacrificed to that which is expressed in the other. To which, then, shall the preference be given? Shall we retain a declaration that,'from the want of those operative words which a court has no right to supply, must remain unexecuted ? or a devise which contains all the words that can enable the court to carry into effect the intention which they express ? Shall we follow that which the testator has said, or that which he. has only declared that he meant to say ? These questions suggest of themselves the necessary reply; and the application of the reply is,too obvious to require to be stated.
An additional proof that the rule in question is not to be regarded and rejected as arbitrary, is found in the fact that it has been constantly applied to the construction of statutes as well as of wills. The preamble to a statute has been generally called the key to its interpretation; and it is of such frequent and material use in settling the meaning of doubtful provisions, that it well deserves the appellation. But when the terms of an enacting clause in a statute are clear and positive, it is certain that their operation can never be restricted or enlarged by a resort to the preamble. In all such cases, judges must say, the law is that which the legislator has made it; not that which he has declared it was desirable or expedient to make it. (Crespigny v. Whitmore, 4 Term R. 393; Basset v. Basset, 3 Atk. 204; Cowper 543; Dwarris on Statutes 655.)
So far it has been admitted, that the testator in this last codicil has declared his intention to take from the defendant, his grandson, all that he had previously given. But it may be seriously doubted whether such is the fair, as it certainly is not the necessary, and far less the charitable, interpretation of his language. He declares his unwillingness that any portion of his estate shall be instrumental in building up the erroneous faith which his grandson had embraced; but it by no means follows, from the expression of this sentiment, that he meant to deprive that grandson of the necessary means of personal support. He may only* have meant to deprive him of a surplus, which the grandson would have it in his power, and as a Romish priest, would feel it his duty, to devote to the promotion of *117 his faith and the interests of his church. If so, the codicil is consistent in all its parts, and agrees throughout with the construction that we have given to it; nor shall we dissemble our satisfaction, that the interpretation which charity suggests, is that which, upon plain grounds of reason and of law, we have been enabled to adopt.
This opinion has extended to an unusual and it may be thought an unnecessary length; but we have been actuated by the hope, that the reasons which we have labored to explain, when duly weighed, will be found satisfactory to the parties, and will thus put an end to a litigation that we are sine all the members of the family of the testator must sincerely regret. That the defendant, his grandson, will acquiesce in our decision, we cannot doubt; and we think that, without travelling beyond our province as judges, we may express the hope, that the trustees of the Seminary will be content with that portion of the estate, which under our decision they will be entitled to receive. Even should they, under the advice of counsel, be unable to admit the propriety of our decision, there are many reasons, not simply of expediency, but such as the true spirit of our religion, it seems to us, will not fail to suggest, that may lead them to abstain from any further prosecution of their claims. The conduct of the Rev. Mr. Bayley, in abandoning the Protestant faith of his ancestors, none of us who are Protestants can approve; but this error, which all of us must trust will prove to be venial, is not to be named with the guilt he would have ineurred, if, holding the opinions he does, he had remained in the church to which he belonged. He is not to be blamed, but commended, that, in order to save himself from this guilt, he has followed, at the sacrifice of his interests, the dictates of his conscience, and God forbid, that such a step should ever be thought to dissolve the bonds of kindred or of Christian fellowship.
Our decision is, that the defendants, The Union Theological Seminary, are entitled to two thirds of all the funds and stocks which are set forth in the bill, as now in the hands of the executors ; and that they will also be entitled to two thirds of that portion of the residuary estate, as defined in the sixth section of *118 the will, which may hereafter come into the hands of the executors for distribution, as belonging to the share to which the defendant, James R. Bayley, under the will and second codicil, wonld have been entitled; and that the defendant, James R. Bayley, is entitled to the remaining third of his original portion or share of the residuary estate, whether now in the hands of the executors, or hereafter to come into their hands; and that he is also entitled to the future estates and interests that are devised and bequeathed to him in the seventh section of the will; and will also be entitled, as one of the heirs at law, and next of kin, to a share in the future estates and interests, originally devised to James Barclay Roosevelt, and which have lapsed by his death in the lifetime of the testator.
The costs of all the parties are to he paid out of the funds in the hands of the executors,-who will also be entitled to retain out of those funds all their expenses in this suit. Should it he thought necessary by the parties, a reference to take the proper accounts will he ordered.