## ESTATE OF ALICE SKAE, DECEASED.
[No. 29,150; decided February 15, 1905.]

**Equitable Conversion—Whether Takes Place by Implication.**—Equitable conversion may take place by implication as well as by express words.

**Equitable Conversion—When Worked by Implication.**—If a will authorizes the executors to sell real estate, and the general scheme of the testament manifests an intention on the part of the testator that there shall be an equitable conversion of the realty into personal property, such a conversion will take place, although the power to sell is not imperative.

1. Application for partial distribution by Alice Warren Skae, sole heir at law. Opposition by Mercantile Trust Company.

2. Application for final distribution by Mercantile Trust Company of San Francisco, testamentary trustee. Opposition by Alice Warren Skae.

Wilson & Wilson, for heir, cited the following authorities: Civ. Code, secs. 857, 864, 1384; Carpenter v. Cook, 132 Cal. 621, 84 Am. St. Rep. 118, 64 Pac. 997; Morfew v. San Francisco & S. R. R. Co., 107 Cal. 595, 596; Estate of Fair, 132 Cal. 523, 546, 84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000; Cooke v. Platt, 98 N. Y. 35; Chamberlain v. Taylor, 105 N. Y. 185, 194, 11 N. E. 625; Henderson v. Henderson, 113 N. Y. 11, 20 N. E. 814; Woerz v. Rademacher, 120 N. Y. 62, 23 N. E. 1113; Steinhardt v. Cunningham, 130 N. Y. 292, 29 N. E. 100; Hofsas v. Cummings, 141 Cal. 525, 75 Pac. 110; McCurdy v. Otto, 140 Cal. 50, 73 Pac. 748; Estate of Walkerly, 108 Cal. 627, 628, 652, 49 Am. St. Rep. 97, 41

Pac. 772; Estate of Young, 123 Cal. 343, 55 Pac. 1011; Estate of Sanford, 136 Cal. 100, 68 Pac. 494; Estate of Dixon, 143 Cal. 511, 77 Pac. 412; Estate of Pichoir, 139 Cal. 684, 73 Pac. 606; Estate of Fair, 136 Cal. 79, 68 Pac. 306; Am. & Eng. Ency. of Law, 1st ed., p. 510, and cases cited; Janes v. Throckmorton, 57 Cal. 368, 383; Bank of Ukiah v. Rice, 143 Cal. 270, 271, 101 Am. St. Rep. 118, 76 Pac. 1020; Scholle v. Scholle, 113 N. Y. 270, 21 N. E. 84; Clift v. Moses, 116 N. Y. 157, 22 N. E. 393; Fraser v. McNaughton, 58 Hun, 31, 11 N. Y. Supp. 384; White v. Howard, 46 N. Y. 162; Estate of Pforr, 144 Cal. 121, 77 Pac. 826; Crouse v. Peterson, 130 Cal. 175, 80 Am. St. Rep. 89, 62 Pac. 475, 615; Estate of Lahiff, 86 Cal. 151, 24 Pac. 850; Fletcher v. Ashburner, 1 White & Tudor's Leading Cases in Equity, part 2, p. 1118 (and cases cited on p. 1134); 2 Story's Equity Jurisprudence, sec. 1214; 1 Beach on Modern Equity Jurisprudence, sec. 523; Wheldale v. Partridge, 5 Ves. Jr. *397, and note. Walker v. Denne, 2 Ves. Jr. *186; Samuel v. Samuel, 4 B. Mon. (Ky.) 253, 254; King v. King, 13 R. I. 501; Becker's Estate, 150 Pa. 526, 24 Atl. 687; Mills v. Harris, 104 N. C. 629, 10 S. E. 704; Tickel v. Quinn, 1 Dem. (N. Y. Sur.) 428; Keller v. Harper, 64 Md. 82, 1 Atl. 65; Lynn v. Gephart, 27 Md. 563.

Morrison & Cope, for trustee, cited the following authorities: Civ. Code, sec. 1338; In re Pforr's Estate, 144 Cal. 121, 77 Pac. 827; Dodge v. Pond, 23 N. Y. 69; Dodge v. Williams, 46 Wis. 97, 50 N. W. 1103, 1106; Bogert v. Hertell, 4 Hill, 492-497, and cases cited; Ford v. Ford, 70 Wis. 19, 5 Am. St. Rep. 117-124, 33 N. W. 188; Lent v. Howard, 89 N. Y. 169, 177; Moncrief v. Ross, 50 N. Y. 431-436; Doughty v. Bull, 2 Wms. 430; Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498; Morse v. Morse, 85 N. Y. 53, 59; Allen v. Watts, 98 Ala. 384, 11 South. 646; Harrington v. Pier, 105 Wis. 485, 76 Am. St. Rep. 924, 82 N. W. 345, 50 L. R. A. 307, 313; Given v. Hilton, 95 U. S. 591, 24 L. Ed. 458; Power v. Cassidy, 79 N. Y. 602, 613, 35 Am. Rep. 550; Clarke v. Clarke, 46 S. C. 230, 57 Am. St. Rep. 675, 24 S. E. 202, 205-207; Fraser v. Trustees U. P. Church, 124 N. Y. 479, 26 N. E. 1034; Cherry v. Greene, 115 Ill. 591, 4 N. E.

257; Going v. Emery, 16 Pick. (33 Mass.) 107, 112, 113, 26 Am. Dec. 645; Wurt's Exrs. v. Page, 19 N. J. Eq. 365, 375; Fahnestock v. Fahnestock, 152 Pa. 56, 34 Am. St. Rep. 623, 25 Atl. 313; Chick v. Ives, 2 Neb. (Unofficial) 879, 90 N. W. 751, and authorities therein cited; Becker v. Chester, 115 Wis. 90, 117-126, 91 N. W. 87, 97-100, 650.

COFFEY, J.   Alice Warren Skae is the only child, and sole heir at law of Alice Skae, decedent, who died in New York City on the sixth day of July, 1903, leaving estate, real and personal, in San Francisco and elsewhere, which she sought to dispose of by a will admitted to probate primarily in the New York county surrogates' court and by authenticated copy subsequently in this jurisdiction on September 12, 1903, wherein letters testamentary were issued to Mercantile Trust Company of San Francisco, a corporation, which thereupon qualified as executor and ever since has acted and now is acting in that capacity.   The jurisdictional facts being established, Alice Skae, as heir at law, asks that certain property described in her petition be distributed to her.

The executor resists this application and avers that the property described was disposed of by testatrix in and by her will, admitted to probate as aforesaid, which made a complete distribution of all her property in trust as follows: To the said Mercantile Trust Company of San Francisco in trust to receive the rents, income and profits thereof, and to pay therefrom the proper and necessary expenses of managing and caring for said property and of putting and keeping in repair the burial vault owned by said deceased in the cemetery at Oakland and a proper compensation for its services as trustee and to apply the balance of such rents, income and profits to the use of said Alice W. Skae, during her natural life, with authority in said trustee to sell, at public or private sale, the whole or any part of the real estate of the decedent and the proceeds to invest for the purposes of said trust; also to lease the real estate and mortgage the same to secure any loan required to pay an existing mortgage thereon or to rebuild or improve the buildings thereon; and after the decease of the said daughter, Alice

Warren Skae, the decedent testatrix directed the said trustee to pay out of the principal of said trust fund the sum of $50,000 to the lawful husband of said daughter, who should survive, if any, and to distribute the remainder among her children, who should survive her, if any, it being understood that the issue of a deceased child should take together the share per stirpes which such child would have taken, if he or she had survived said daughter of testatrix; and in case said Alice Warren Skae should leave no issue, then the testatrix directed that the trustee should out of the trust property which would have gone to such issue, if any had survived, pay certain gifts to and for certain persons and purposes and then to divide the remainder among indicated individuals.

In order to arrive at the intention of the testatrix it may be better to reproduce here the language of the will, for the rule is, as stated by our supreme court, to ascertain the meaning of the writer by the terms he employs to signify his purpose. It is not, what did he mean? but, what do his words mean? Estate of Fair, 132 Cal. 546, 84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000.

The first item of the will need not be rendered literally, as it was revoked by the codicil; but the subsequent paragraphs will be better understood if given in their exact phrase than by abstract or synopsis. These items are as follows, in their order:

Item—"I give, devise and bequeath all the rest, residue and remainder of my property and estate, real and personal, of which I may die seized or possessed, or to which I may be in any wise entitled at the time of my decease, unto the Mercantile Trust Company of San Francisco, California, in trust, to receive the rents, income and profits, thereof, and to pay therefrom the proper and necessary expenses of managing and caring for said property and a proper compensation for its services of Trustee, and to apply the balance of such rents, income and profits to the use of my daughter Alice Warren Skae during her natural life.

"I authorize and empower the said Trustee to sell at public or private sale, the whole or part of my real estate and the proceeds to invest for the purposes of said trust. Also

to lease my real estate and to mortgage the same to secure any loan which may be reasonably required to pay off an existing mortgage thereon, or to rebuild and improve the buildings thereon.

"After the decease of my daughter Alice Warren Skae, I direct that said Trustee pay out of the principal of said Trust Fund, the sum of Fifty thousand dollars to the lawful husband of said Alice Warren Skae, who shall survive her, if any, and to distribute the remainder of said Trust property among the children of said Alice Warren Skae, who shall survive her, if any, it being understood that the issue of a deceased child of said Alice Warren Skae shall together take the share per stirpes which said deceased child would have taken, if he or she had survived said Alice Warren Skae."

Item—"In case my daughter Alice Warren Skae shall leave no issue of her body her surviving, then I direct that the said Trustee shall out of the said Trust property which would have gone to such issue, if any had survived, pay the following gifts, viz": (Naming persons and objects.)

Item—"After all the preceding gifts shall be fully paid so far as may be lawful or possible, I direct the said Trustee to divide all the residue which shall then remain of said Trust property (including all gifts that may lapse, and the sum given in trust for Mary Skae, after the termination of said trust) unto and among the following named persons, viz": (Naming them.)

The property of this estate, according to the inventory and appraisement filed June 30, 1904, was in personalty valued at $31,427.87 and in land $150,000, with improvements thereon $50,000. So far as this discussion is concerned, the actual status of the property at this date may be considered as realty, amounting in value to $200,000.

In support of the application for partial distribution, it is conceded that the trust to receive the rents, income and profits and to apply the same to the use of the daughter during her natural life is valid unless it fail by reason of the invalidity of the other trusts, which are claimed to be repugnant to the statute. The trust for the husband is assailed as clearly void under section 857 of the Civil Code,

and not authorized by any of its subdivisions. Subdivision 1 provides for a trust to sell real property and apply or dispose of the proceeds in accordance with the instrument creating the trust. It is argued that in this case there is not only no direction that the real estate be sold and the $50,000 paid out of the proceeds, but the will contains no imperative direction whatever that the real estate be sold, and a trust under this subdivision must be imperative and mandatory and not left to the discretion of the trustee, and if so left, it is not a trust under this statute.

The second subdivision of this section relates to trusts to mortgage or lease real property and the clause concerning the husband is not within its purview.

The third subdivision relates to trusts to receive the rents and profits of real property and apply them to the use of certain persons. This provision covers the trust for the benefit of the daughter, but does not seem to have any bearing upon the clause for the possible surviving husband as that is not to receive rents and profits and apply the same to his use but is a trust to pay him a certain sum out of the principal.

The fourth subdivision provides for a trust to receive the rents and profits of real property and to accumulate the same for certain purposes, and has no application to the husband trust.

If section 857 of the Civil Code be depended upon to support the fifty thousand dollar clause, it would seem as if that trust provision is void.

Following the clause providing for the husband is the direction to the trustee "to distribute the remainder of said trust property among the children of said Alice Warren Skae," and it is maintained, on her behalf, that this is a trust to convey real property and is, therefore, void under the authorities, since the property would not vest in the children on the death of the mother, and it would be necessary, under this trust, for the trustee to convey the land to them and such an act is inhibited by law. The only trusts of real property are those stated in section 857 of the Civil Code, which contains no allusion to trusts "to distribute."

If this provision is to be construed as a trust to convey, it seems to be the settled law of this state that it is invalid, and it is insisted on behalf of the daughter that the words "to distribute," as used in the will, are the equivalent of "to convey"; for, it is said, they certainly contemplate that the trustee upon her death shall execute a conveyance of the remainder of the trust property to each one of the children then living and the issue of any deceased children; for it was evidently contemplated that there might be a number of persons who would be entitled to the trust property at the death of the daughter and the testatrix directs the trustee to distribute the property in proper proportions to each one of such persons and it is not easy to conceive of any method of carrying out this direction except by the execution of a conveyance.

Section 864 of the Civil Code provides that the author of a trust may prescribe to whom the property shall belong on the termination of the trust, but it is contended that there is no such prescription when there is a plain direction to the trustee as in this case.

It is admitted that the intent of the testatrix is evident, but the courts of last resort have ruled that this intention is immaterial unless the disposition be valid. If the trustee could "distribute" by one mode only, and real estate must pass by conveyance alone, and if we treat this trust in that class, the disposition is void. It is asserted on authority that the will containing no words of direct devise, which are essential, a conveyance to the children from the trustee would be indispensable to transfer title.

The trustee submits three reasons why the application of the daughter should be denied and the will in its integrity be sustained:

1. The court should strive to sustain rather than overthrow the will; it should be industrious to carry out rather than defeat the plain purposes of the testatrix, and to prevent rather than create intestacy.

2. There is no trust to convey in this will.

3. The authority given to the trustee to sell the real estate, coupled with the other provisions of the will showing the intention of the testatrix that the property should be

distributed as personal property rather than real estate, is sufficient to create an equitable conversion.

In support of the third reason or proposition the trustee relies upon the Estate of Pforr decided by our supreme court, California Decisions, volume 28, No. 1509, page 105, opinion written by Commissioner Harrison (144 Cal. 121, 77 Pac. 825), which it is claimed has become the law of the state and is the latest expression of the court itself upon the important questions therein discussed. In that case the testator desired and directed the executors to take charge of the property, to collect its rents and income, defray expenses, renew mortgages, and execute new ones when necessary for a term of two years from the date of his demise, and then he desired them to have the property sold at public auction or otherwise and to divide the net proceeds into six equal parts and distribute the same among his heirs and devisees as therein set forth.

The commissioner held that the provision for the sale of the property and the distribution of its proceeds among the six beneficiaries operated as an equitable conversion of the real estate into personalty, under section 1338 of the Civil Code, which provides that when a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of testator's death; and this result is not overcome by reason of the testator having used the word "desire" instead of "direct" in authorizing the sale, for the words "I desire" that my real estate shall be sold are the equivalent of the words "I will" that it be sold, as while the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when given to his executor. The commissioner further held that whether such a conversion is effected depends upon the intention of the testator as gathered from the entire provisions of his will; and, if it is apparent from its terms that it was his will that the estate be sold and the proceeds given to his beneficiaries an equitable conversion results, even if the direction for the sale is not imperative, citing a New York case, Dodge v. Pond, 23 N. Y. 69, in support of this

point, and adding, from a New Jersey opinion, that the question of conversion is one of intention, the real question being, Did the testator intend his land should be converted into money at all events before distribution? Wurts v. Page, 19 N. J. Eq. 375. The applicant admits that the words "at all events" in this quotation state the law correctly, in the sense that the direction, whether express or implied, must be mandatory, but as to the part of his opinion given upon the authority of Dodge v. Pond, counsel says that the language of the learned commissioner is based on a syllabus not corresponding to the text. As this case is considered of authoritative importance, it may be worth while to compare the syllabus, page 69, with the terms of the opinion on page 76 of the report. The syllabus is: "Where a testator authorizes his executors to sell real estate, and it is apparent from the general provisions of the will that he intended such estate to be sold, the doctrine of equitable conversion applies, although the power of sale is not in terms imperative." Judge Selden, in delivering the decision said: "It is, perhaps, not very important, so far as the questions argued at the hearing are concerned, to determine whether the power of sale conferred upon the executors by the first clause of the will is to be regarded as imperative, or merely discretionary, or whether we treat the property as partly real and partly personal, as at the death of the testator, or as all converted into personalty. If, however, it is deemed to have any bearing on the questions presented, there can be no doubt, from the terms of the power and the general provisions of the will, that the testator intended that the whole real estate, except that portion devised to the widow, should be sold and converted into money, prior to the general distribution provided for in the twentieth clause, and that, upon the established principles of equitable conversion, this should be considered as done." The first clause of the will authorized and empowered the executors to sell and convert into money all the testator's estate, real and personal (except that given to his wife), either at public or private sale, and upon such terms as they might think conducive to the interests of his estate. Counsel for the daughter discredits

this decision and asserts that it is not authority even in New York, and is not followed there by any one of the leading cases, to which his adversary answers that it has been frequently approved in that and other states, and that none of the cases cited in any way modify or overrule the doctrine therein enunciated, and in that connection calls the attention of the court to Power v. Cassidy, 79 N. Y. 602, 35 Am. Rep. 550, particularly pages 613 and 614 of the opinion of Miller, J. It may be said, by the way, that the syllabus on page 603 is in words almost identical with that in Dodge v. Pond, supra. Judge Miller held that the court below was clearly right in deciding that by the terms of the will there was an equitable conversion of all the testator's real estate into personalty. The whole scope and tenor of the will evinces that the testator intended such a conversion and that the estate should be divided as personal estate. The doctrine of equitable conversion is quite familiar and the rule on the subject well settled. It is obvious upon the face of the will that the testator intended that such conversion should be made. The executors are vested with full power and authority to sell as they may deem proper, and after making ample provisions for the wife of testator and directing the payment of certain legacies, the residue is to be divided: one-third to the widow, one-third to a nephew, and the "balance" among a class of institutions to be designated and in proportions to be fixed as directed. The language could not have been more emphatic, said Judge Miller, nor more direct to carry out the design of a division of the remainder as personal estate. The estate could only be effectually divided, and the purposes of the will efficiently carried out, by converting the real into personal property; and the judge proceeds to point out what, in his judgment, would be the impropriety and embarrassment and possible loss attendant upon a contrary construction which would necessarily interfere with the designs and purposes which the testator had in mind when he made his will, and would, moreover, be adverse to the general rule of interpretation which is applicable in cases of this description. Judge Miller concluded his decision on this head by remarking that the circumstance that

the direction to sell was not imperative, was by no means conclusive, for the reasons already recited in the syllabus in Dodge v. Pond, supra, which he cites and repeats in the exact words found on page 69. It appears in this instance, at least, that the syllabus does correspond to the text; but counsel for the daughter says that the Pforr case does not uphold the executor's contention that there is in the will of Mrs. Skae an implied direction to convert sufficient to effect a conversion of her real estate into personal property. In Pforr's estate the direction to the executor to sell was mandatory and imperative; nothing was left to the discretion of the executor except the manner of sale; the sale had to be made in any event; and this worked a conversion, according to counsel, under the rule laid down in the leading California cases, but has no bearing on a case where the equitable conversion is effected by implied direction. An examination of the record in the Estate of Pforr shows that no point had been raised as to equitable conversion in either trial or appellate court; but the learned commissioner, nevertheless, held that the express and mandatory directions in the will caused a conversion; that is to say, he imported a new question into the controversy which was not referred to by counsel in the argument nor considered by the court below nor in any manner alluded to in the briefs or transcript on appeal. In that case, however, although the attention of the court was called in the petition for rehearing to the fact that the doctrine of equitable conversion was not relied upon or mentioned by the parties or their counsel, the application was denied and thus the executor considers the discussion of the value of the decision is at an end, and it is binding on this court in this case. In the Pforr estate the commissioner quoted from Pomeroy's Equity Jurisprudence, but inasmuch as an erroneous deduction is imputed to him, it may be well to consider the text of the entire section of which his quotation forms the last two sentences. Professor Pomeroy says in section 1160, in treating of what words are sufficient to effect a conversion, that the whole scope and meaning of the fundamental principle underlying the doctrine are involved in the existence of a duty resting

upon the trustee to do the specified act; for unless the equitable ought exists, there is no reason for the operation of the maxim, equity regards that as done which ought to be done. The rule is therefore firmly settled, that in order to work a conversion while the property is yet actually un-changed in form, there must be a clear and imperative direction in the will to convert the property—that is, to sell the land for money, or to lay out the money in the purchase of land. If the act of converting is left to the option, discretion, or choice of the trustee, then no equitable conversion will take place, because no duty to make the change rests upon him. It is not essential, however, that the direction should be express, in order to be imperative; it may be necessarily implied. Where a power to convert is given without words of command, so that there is an appearance of discretion, if the trusts or limitations are of a description exclusively applicable to one species of property, this circumstance is sufficient to outweigh the appearance of an option, and to render the whole imperative. Thus if a power is given to lay out money in land, but the limitations expressed are applicable only to land, this will show an intention that the money should be so laid out, and will amount to an imperative direction to convert, for otherwise the terms of the instrument could not be carried into effect. In fact, the whole result depends upon the intention. If by express language, or by a reasonable construction of all its terms, the instrument shows an intention that the original form of the property shall be changed, then a conversion takes place.

In the New Jersey case, Wurts v. Page, from which Commissioner Harrison made a short quotation in the Pforr estate, the chancellor said that the doctrine of equitable or notional conversion is well established, the difficulty being in its application. Wherever a testator has positively directed his real estate to be sold and distributed as money, it will be considered for the purposes of succession as personal; but in that case there was no such direction. The direction to sell simply authorized and empowered his executors to sell any part of his real estate in case they should at any time deem it advisable. The court held that this was

not a direction to convert, but, on the contrary, a seeming direction to let it remain as real estate, until it became advisable from time to time to sell it; and the chancellor said if this were the only part of the will to guide him, the real property could not be considered as converted until actually sold; but the question of conversion is one of intention; the real point is, Did the testator intend his lands to be converted into money at all events before the distribution? In the Wurts case, it seemed to the chancellor that the directions in other parts of the will show clearly that he did so intend. The spirit of the whole directions showed that conversion was intended. All the directions showed that the testator intended that his estate should be converted into money before it was distributed by his trustees, and they would be required to convert it into money before distribution and to pay it over in that form; and the rule is well settled that if the will requires the real estate to be converted into money at all events, notwithstanding the executors may have a discretion as to the time, it must be considered as converted into money from the death of the testator. One of the directions was that the portions of his sons and his grandson were to be paid to them upon their arriving respectively at the age of twenty-two years.

In connection with these authorities, it is argued by the respondent in the case at bar that the duty to convert results from the duty of the trustee to carry out the provisions of the will; and it is claimed that the decisions abundantly establish the doctrine that where there is an authority to sell and the language of the entire instrument shows that it was the intention of the testatrix that the bequests should be paid in personal property rather than in real estate, the duty results to convert real estate into personal property. The words used by her indicate the purpose of testatrix to have the entire property distributed as personal rather than transferred as real estate. The testatrix throughout uses the words "pay" and "paid," the idea of which necessarily involves liquidation in money or personal equivalent. She provides that the trustee shall "pay" out of the principal of said trust fund $50,000 to the surviving husband and "dis-

tribute the remainder of said trust property among the children," if any, of her daughter. In case her daughter die leaving no issue, the trustee shall "pay" out of the trust property which would have gone to such issue certain "gifts," and after all these gifts shall be fully "paid" the trustee is directed to "divide" the residue. If it had been the intention of the testatrix that the property should go in kind to the children, the apt words would have been "transfer and convey," and it would have been the plain duty of the draftsman of the document to have used such phrase, if that had been the idea communicated to him as the direction of decedent. If this contention be correct, there is no trust to convey in the will of Alice Skae. In this view of the case, it does not seem possible to carry out all the terms of the testament without a sale of at least a portion of the real estate; but, the trustee contends that even if it were possible to do so in a certain contingency, such possibility should not be seized upon as a reason for overthrowing the manifest intention of the testatrix as collected from the entire instrument. The scheme of the will evinces a far-reaching purpose to provide for every contingency that might possibly arise. After the provision for the daughter during her lifetime, she establishes a fund the result of an investment of the proceeds of sale of the whole or any part of her estate, which she authorized and empowered them to make, and out of those proceeds are to be "paid," "distributed," and "divided," in the contingencies mentioned, her various bounties and benefactions. This comes close to the Wurts case cited in the Pforr estate, wherein the chancellor remarked upon the direction to invest as implying a sale of the real estate.

Counsel for the daughter disputes the authority of the Pforr estate, declaring that its dicta are at variance with the decisions of our supreme court in important cases, which announced the fundamental principles of the law after thorough consideration and deliberation, the first cited being Janes v. Throckmorton, 57 Cal. 368, decided in 1881, a case of magnitude as to the interests and principles involved, in which, it is claimed, the rule is established that in order to work a conversion it must be obligatory on the trustee to

sell the land in any event, and it was held there was no conversion because the deed was not imperative that the land be sold. The case involved the construction of a covenant in the nature of a declaration of trust. The statement of the question made by counsel for the trustee herein seems to be substantially correct. The covenant provided that Throckmorton should sell so much of the real estate as he might deem necessary to pay off certain debts and encumbrances, and that he should account and pay over to two persons named the one-fifth part of the moneys remaining after paying the indebtedness and expenses; that the said Throckmorton should sell all of the lands within three years of the date, or at his option convey the undivided one-fifth part of all lands remaining unsold, after the discharge of the debts and expenses, to those persons, and the question before the court was as to the character of their interest under this covenant. It was held to be an interest in the lands. The action was brought to enforce an alleged trust in favor of plaintiff against defendant in the one-fifth part of all money proceeds of sales of the lands and an undivided one-fifth part of all the lands remaining unsold. Among other defenses, one was that the covenant was a personal one purely, providing for no interest in real estate, and that no trust respecting the lands thereby arose. In discussing this defense, the court reviewed cases upon equitable conversion, among them Dodge v. Pond, but expressed no dissent from the conclusion of that decision; and, indeed, it had no need to consider that phase of the doctrine, which is to the effect that where the power to sell is discretionary, but it appears from a consideration of all the terms of the instrument that it was the intention of the donor that the property should be sold before distribution an equitable conversion would result. The court repeated the rule from 2 Story's Equity Jurisprudence, section 1214, that the inclination of courts of equity upon this branch of jurisprudence is not generally to change the quality of the property, unless there is some clear intention or act by which a definite character, either as money or as land, has been unequivocally fixed upon it throughout; and, if this intention do not clearly appear, the property

retains its original character. As counsel for the daughter, remarks, this is an authority of the greatest weight and is either alluded to or quoted in nearly every American decision on its subject. In the case in 57 California, the court said that the most that could be claimed was, that Throckmorton had the discretion to sell all of the land; but so far from its being obligatory upon him to do so, it was manifestly contemplated that a portion of it might be saved from sale. The Estate of Walkerly, 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 772, decided in 1895, by the full court, is claimed to be a similar case in which the question here discussed was fully argued and considered and the law laid down with precision, in these terms: "The rule of equitable conversion merely amounts to this, that where there is a mandate to sell at a future time, equity, upon the principle of regarding that done which ought to be done, will for certain purposes and in aid of justice consider the conversion as effected at the time when the sale ought to take place, whether the land be then really sold or not; but whenever the direction is for a future sale, up to the time fixed it is governed by the law of real estate." This extract is quoted with approval in Bank of Ukiah v. Rice, 143 Cal. 270, 101 Am. St. Rep. 118, 76 Pac. 1020, which says that it clearly expresses the doctrine that there can be no conversion until the executor shall have the power to make the sale. The opinion in the Bank of Ukiah v. Rice was written by Commissioner Harrison, May, 1904, and confirmed by department 2 of the supreme court, and counsel for the daughter insists that it firmly establishes the law on this point in this state. In the Ukiah case the commissioner said that if the will postpones the time of sale until the happening of some future event or until some fixed date, the conversion is likewise postponed. In the case at bar, it is claimed by the daughter that there is not only no mandate to sell, but the beneficiaries could, at any time before an actual sale, elect to take the land, instead of its proceeds, and thus extinguish the authority of the trustee to make a sale. This proposition is advanced on the authority of the Bank of Ukiah v. Rice, page 271, of 143 Cal., but is answered by the suggestion that it is difficult to conceive

that the beneficiaries in this case would exercise an election to take the land instead of its proceeds when such an act would defeat their right to take at all, even if it were true that the property could be distributed in kind by the trustee without violating any of the testamentary provisions. In the Estate of Walkerly it seemed to be claimed that the equitable conversion took place at the death of the testator. The will contained an imperative direction to the trustees to sell and convey all the trust estate at the expiration of twenty-five years from the date of the death of the testator. The court held that this clause unlawfully suspended the power of alienation, and was therefore void, remarking that the doctrine of equitable conversion could not be invoked to aid that trust. The counsel in that case had urged that under that doctrine the land should be treated as sold and converted into personal property, and that such a trust in personal property would be valid, and that, therefore, the Walkerly trust must be upheld; but the court observed that would not only be a surprising application of the doctrine, but would be a novel and startling method of evading the law against perpetuities by invoking an equitable fiction; and then the court proceeded to explain the rule in the language already quoted, ending with the sentence: "But whenever the direction is for a future sale, up to the time fixed the land is governed by the law of real estate." In the matter of the will of Alice Skae, there is no fixed period during which the property must be retained as real estate. It is claimed by the trustees that this is the precise condition which calls for the application of the doctrine as defined in the Walkerly case, in which, it may be repeated, it was held that where the will provided that the property should not be converted for a determinate period an equitable conversion could not be raised prior to the point of time prescribed; and, it is argued, that in the numerous cases of the construction of wills in which the doctrine of equitable conversion has been applied there was no positive direction for a sale and there was no particular time within which a sale was required to be made, but the courts have held that all that is necessary is to put the doctrine into operation is an

intention implied from the whole instrument that the sale should be made at some time before the ultimate distribution, and, if such an intention appears, the conversion will be deemed to have been made at the death of the testator. Pomeroy says, concerning the time from which conversion takes effect, that this, like all other questions of intention, must ultimately depend upon the provisions of the particular instrument. The instrument might in express terms contain an absolute direction to sell or to purchase at some specified future time; and if it created a trust to sell upon the happening of a specified event, which might or might not happen, then the conversion would only take place from the time of the happening of that event, but would occur when the event happened as though there had been an absolute direction to sell at that time. Subject to this general modification, the rule is settled that a conversion takes place in wills as from the death of the testator. The same commissioner who wrote the opinion in the Bank of Ukiah case in May, 1903, exactly two months later delivered the decision in the Pforr estate, July, 1904. The later expression of his views is hardly to be presumed inconsistent with the earlier, and both may be reconciled with the matter of Walkerly, so far as they are made applicable to the case at bar. The fact is, however, that after all our examination of cases and authorities, we receive but little assistance in reaching a conclusion in the matter in hand, except (as has been said repeatedly by courts) for the establishment of general principles in the construction of wills; for it seldom or never happens that two cases can be found precisely alike: Le Breton v. Cook, 107 Cal. 416, 40 Pac. 552, quoting Washington, J., in Lambert's Lessee v. Paine, 3 Cranch, 131, 2 L. Ed. 389, decided in 1803. As it was one hundred years ago, so it is to-day. Each case must be considered as a whole with reference to the object of the testator. The general principles are evident enough; the difficulty is, as remarked by our supreme court, in their application to a given case. The end of the inquiry of the court is the discovery of the intent of the testator, and its investigation must be limited to the language of the testament. When that end is attained, the duty of the court is

to execute that intent. It may be that the result of the judicial inquiry may be contrary to the real design of the decedent, but the intention to be sought after is not that merely which existed in the mind, but that which took form in the written words of the testator; and if those words admit of no other construction than one which clearly shows that she attempted to dispose of her property in a manner forbidden by statute, the intention of the testatrix should be interpreted in defeasance of her purpose. This may seem a harsh result, as was said in the Walkerly case, to interpret an instrument contrary to the will of the testator; but if the intent be expressed in terms at variance with the law, the trust must fail; for, even though it be true that such was not the testator's intent, he must do more than merely evince an intention in a certain direction, he must make a valid disposition of his property. It is always with reluctance that courts declare a will or a provision thereof void, and in all cases they endeavor to carry out the intentions of a deceased person, as expressed in the will, if it can be done without disregarding the law and the statutes of the state; and they would violate their duty and the trust reposed in them if they should disregard the law enacted by the legislature and its mandates to carry into effect a will in violation thereof: Estate Dixon, opinion by Commissioner Cooper, department two, supreme court, June 10, 1904, 143 Cal. 511, 77 Pac. 412.

Is this court, in considering and construing the will of Alice Skae, deceased, placed in the predicament described in which, it is confessed, the natural and true intention of the testatrix was made to yield to legal interpretation of her language; for it is admitted here that the intent of the testatrix is evident, but that such intent is to be nullified by judicial construction of her words. At the risk of repetition there may be introduced here from Beach on Modern Equity Jurisprudence, what counsel for the daughter in the case at bar says is a statement of the doctrine under discussion which declares the rule in the most clear and concise terms. Equitable conversion, remarks Beach, may take place by implication as well as by express words. When-

ever the general scheme of the will requires a conversion, the power of sale, although not in terms imperative, operates as a conversion. The necessity of a conversion to accomplish the purposes expressed in a will is equivalent to an imperative direction to convert. But the provisions of the will must, at least, be of such a character as to leave no doubt of the testator's intent that there should be a conversion. In a late case in New York (1892) it was said that to justify a conversion there must be a positive direction to convert, which though not expressed may be implied, but, in the latter case, only when the design and purpose of the testator is unequivocal and the implication so plain as to leave no substantial doubt: Clift v. Moses, 116 N. Y. 157, 22 N. E. 393. Where only a power of sale is given, without explicit and imperative directions for its exercise, and the intention of the testator can be carried out without a conversion, none will be adjudged; and where there are no express directions for a conversion none will result because it would be convenient as an aid to the distribution of the estate; it must be necessary and essential. In support of this text is cited, among many other cases, Power v. Cassidy, heretofore considered in this opinion.

As recognizing and tending to illustrate the doctrine and its application contended for by the trustee herein, he calls particularly the attention of the court to the decision in King v. King, 13 R. I. 510, in which it was said that the equitable conversion of a testator's realty into personalty depends, as to both extent and existence, upon his intention judicially determined from his will. In that case it was not contended that the clause under construction contained any direction expressly given that the real estate should be converted at all events. The language was permissive, not mandatory; it conferred an authority, but did not, at least in express terms, issue a command; indeed, the authority was not unqualifiedly given. The trustees were empowered to sell and convey and change investments, not arbitrarily or absolutely, but "as they may deem to be for the interest of the said trust," "or to the advantage of the said trust," or "when the sale of any of said estate may be necessary for the payment of any legacy hereunder." The court said

that this was not such language as would naturally have been used if an out and out conversion had been intended, but it thought, however, that the specific legacies were intended to be paid in money, and that, therefore, for lack of personal estate to pay them, there would have been necessarily implied a direction, operating pro tanto as a conversion, to sell enough of the real estate to pay them; but there was in the same clause a significant provision, which in itself was consistent with conversion at all events, that the legatees might take the real estate in payment at a valuation in lieu of money, and in addition there was no lack of personalty.

In the case at bar there is next to no personal property, and there is no provision contemplating an election of land in lieu of money in the instrument. The dominant idea of the testatrix seems to have been to bestow her benefactions in money, and the terms employed by her leave no room for doubt of her intention. Now, is that intention to be defeated by imputing to her words a meaning foreign to her manifest and persistent purpose? Can this court, without distorting her diction, destroy her will and produce intestacy where it is clear she intended to dispose of every particle of her property in pursuance of an intelligent design in a well wrought out scheme? Is not the exercise of the power of sale rendered necessary and essential by the scope of the will and its declared purposes; and is there not here an implied direction to convert, by reason of the unequivocal manner in which the designs and purposes of the testatrix are expressed, making the implication so strong as to leave no substantial doubt? Is not the direction necessarily implied? In order to answer accurately these questions, we must consider carefully the whole scheme of the will and weigh the words of the testatrix with the facts and circumstances of the case. At the time of her death she had, in round numbers, about $30,000 in cash, no other personalty of consequence; one parcel of real estate, 120x206.3. part of Western Addition block, on Larkin street, fronting from Fulton street to Birch avenue, valued at $150,000, with improvements thereon appraised at $50,000.

The personality would have been virtually consumed by the first bequest, if it had not been changed by the codicil; but, notwithstanding the revocation, it exhibited the intention of the testatrix at the time she executed the will. It provided for the discharge of debts and funeral expenses, and as part of the latter directed the demolition of the burial vault wherein lay the remains of her husband and two deceased children and the erection of a new vault at a cost of from twenty to twenty-five thousand dollars. After this the testatrix had practically only real property to deal with, so far as the actual present species was concerned; but she used the technical expressions appropriate to carry both real and personal, "give, devise and bequeath," thus implying her knowledge of the legal force and effect of the different testamentary words and the import of the distinct ideas so represented. She then authorized and empowered the trustee to sell the real estate, and then follows the clause which furnishes the bone of contention in this case. Giving all due weight to the argument of counsel for the daughter, this court cannot accept his conclusion without, in its judgment, doing violence to the intention of the testatrix. Taking the words in their logical and actual relation, they indicate a connection in her mind between the idea of a sale and the distribution of the proceeds thereof. The entire context admits of no other interpretation. The sale produces the fund and the funds to be distributed in dollars, cash payments. Testatrix then provides, for the event of the death of the daughter without issue, all money bequests, "gifts" to be paid, in cash, so many dollars to each donee. Without a sale of real estate, these legacies could not be paid; conversion is necessary to their satisfaction. Finally, testatrix directs that after all of these gifts shall be fully paid, the trustee shall divide all the residue which shall then remain of said trust property (including all gifts that may lapse, and the sum given in trust for Mary Skae, after the termination of said trust), unto and among six persons, names and addresses given. A partition of the property can hardly be ascribed to testatrix under this item. The remarks of the New York court of appeals in Power v. Cassidy, supra, page 614, are here somewhat in point. The

evidence in the case at bar shows that a partition of the real estate into six pieces, with the structures thereon as they were at her death and are now would be impracticable, and, even if there were no improvements, such a course might seriously diminish the value of the property, and lessen the avails to be distributed. The words used in this clause, moreover, apply to real rather than to personal property; no one word being exclusively pertinent to realty, some never so applied, and all pointing to a disposition of personalty.

Taking the instrument in its entire form and substance, letter and spirit, construing and interpreting its language in the light of reason and authority, this court is of opinion that the whole scope and tenor of the will imports an equitable conversion; and, thus the application for partial distribution must be and is denied.

---

Equitable Conversion is that change in property by which, for certain purposes, real estate is considered as personal, and personal as real: Haward v. Peavey, 128 Ill. 430, 15 Am. St. Rep. 120, 21 N. E. 503, note in 5 Am. St. Rep. 141. Whether such a result is worked by a will depends upon the intention of the testator. If it is apparent from the express terms of the instrument, or by necessary implication, that he intended his real estate to be sold and the proceeds given his beneficiaries, an equitable conversion results, although perhaps the direction to sell is not imperative, as where the word ''desire'' instead of ''direct'' is addressed to the executors: Estate of Pforr, 144 Cal. 121, 77 Pac. 825. ''Where the will directs the sale of real estate expressly, or by clear implication, or where a sale is absolutely necessary to the execution of the provisions of the will, such real estate is equitably converted into personalty from the time of the testator's death'': Penfield v. Tower, 1 N. D. 216, 46 N. W. 413. But see Estate of Lahiff, 86 Cal. 153, 24 Pac. 850.